(54 South. 466.)

No. 17,780.

NEW ORLEANS REAL ESTATE MORTGAGE & SECURITIES CO. et al. v. TEUTONIA INS. CO. OF NEW ORLEANS et al.

(June 25, 1910. On Rehearing, Feb. 27, 1911.)

*(Syllabus by the Editorial Staff.)*

1. INSURANCE (§§ 4, 493*)—FIRE INSURANCE—NEW YORK STANDARD POLICY—REPEAL BY VALUED POLICY LAW—TOTAL LOSS.

New York standard policy, adopted by the Legislature of this state in 1898 (Act No. 105 of 1898, art. 3, § 22), was repealed by the valued policy law adopted in 1900 (Act No. 135 of 1900).

They are measures of state policy.

The arbitrariness charged in refusing to issue a permit to plaintiff to reconstruct the destroyed building is not evident.

The city acted mainly to compel obedience to the ordinances regulating the construction of new buildings.

It not being possible to rebuild in view of the withholding of the right to rebuild, in consequence the loss was total.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1266–1268; Dec. Dig. §§ 4, 493.*]

2. MUNICIPAL CORPORATIONS (§ 63*)—POLICE POWER—REVIEW BY COURT.

While the exercise of police power of a city may be erroneous and is subject to judicial control, the court should not interfere except on very clear grounds.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1378, 1879; Dec. Dig. § 63.*]

Appeal from Civil District Court, Parish of Orleans; W. B. Sommerville, Judge.

Action by the New Orleans Real Estate Mortgage & Securities Company and another against the Teutonia Insurance Company of New Orleans, La., and others. From the judgment, plaintiffs appeal. Judgment set aside, and judgment rendered against defendants.

Howe, Fenner, Spencer & Cocke and Chas. Payne Fenner, for appellants. Farrar, Jonas, Goldsborough & Goldberg and E. M. Hudson (Richard F. Goldsborough, of counsel), for appellees.

PROVOSTY, J. The present suit is upon five fire insurance policies in as many companies, defendants in this suit.

The disagreement between the parties is as to whether the insured building was wholly destroyed, and the defendant companies are liable in consequence for the entire amount of the policies, or was only partially destroyed, and the defendant companies are liable only for what would have been the cost of restoring the building to its former condition.

It was the Hansell building on Canal street, and the same fire destroyed the Stevens and the Dreyfous buildings on each side. The fire was fought from the front, so that the front wall of the building was practically uninjured. The side walls, which were party walls, remained standing in greater part, and much expert testimony was taken in the case upon whether or not they were

left in sufficiently sound condition to be utilized in the reconstruction of the building.

The city engineer refused to allow them to be thus utilized; and, when their demolition was begun, preparatory to reconstruction, ordered the front wall itself, of which they were the support, to be immediately taken down, as likely to become a menace to the public safety as soon as left to stand by itself.

The policies are in the New York standard form, which was made compulsory in this state by section 22 of article 3 of Act No. 105 of 1898, p. 151. They exempt the insurers from liability "for loss occasioned by ordinance or law regulating construction or repair of buildings."

The insured building did not come up to the requirements of the building ordinances adopted since its erection, and therefore these ordinances stood in the way of its being restored to its former condition. But it was not because of this the city engineer condemned the party walls. The best proof of that is that these party walls were reconstructed precisely as they were before. Nor was it on that account the front wall was required to be taken down. The testimony of the city engineer leaves no doubt whatever upon that point. The side walls were condemned because, rightly or wrongly, the city engineer thought they had been too much affected by the fire to be trusted to support so tall a building; and the front wall because, rightly or wrongly, the city engineer thought it could not be trusted to stand when deprived of the support of the side walls.

Defendants concede that the loss would have been total, if the condemnation of these walls by the city engineer had been justified by the facts, but contend that it was not; and that plaintiff acquiesced in it simply because it chimed in with plaintiff's secret intention not to reconstruct the building, but to receive the insurance money and sell the naked lot. Defendants also contend that the question of what was the true reason for which the city engineer condemned the walls is of little or no importance in the case, because plaintiff asserted under oath in the proof of loss and judicially in the petition, in this case, that the reason why the loss was total was because of these ordinances; and that plaintiff is now committed to that reason and estopped from assigning any other; that plaintiff was then unaware of the existence of another ordinance which made it possible to utilize the said walls in the reconstruction of the building; and that plaintiff's theory then was, and continued to be up to the argument of the case, that the said exemption from liability clause in the policy was inconsistent with the valued policy law of this state (Act No. 135 of 1900, p. 209), and was therefore invalid, or as if not written.

While the preponderance of the expert evidence is that considerable portions of the side walls could have been utilized, and that the front wall could have been made safe by temporary means while the side walls were being reconstructed, we think plaintiff was clearly right in acquiescing in the opinion of the city engineer and of its own architect, and not engaging in a doubtful lawsuit with the city on the subject. The same wise course was followed by the defendant companies themselves, who had undertaken to reconstruct the Dreyfous building. It ill becomes them to blame plaintiff for doing exactly what they themselves did.

The defendant companies could have had the matter contested, if they had so desired. The order of the city engineer was promptly transmitted to them by plaintiff "for such action as you may desire to take." All they did was to indite a letter to the counsel of plaintiff saying that they protested against the order. The counsel very properly re-

plied: Direct your protest to the city engineer, not to us, who are acting under compulsion.

The action of the city engineer was presumably right. The real parties having an interest to contest it were, as the present litigation shows, the defendant companies. Defendants had no right to require plaintiff to pull the chestnuts out of the fire for them; to play buffer between them and the city authorities. If they desired to have the matter contested, the door was open to them to have it done. Under the circumstances of the case, the same principles come into play by which a person liable over is held, at common law, to be concluded by the judgment in a suit which he has had an opportunity to defend. Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 427; Strong v. Phœnix, etc., Co., 62 Mo. 296, 21 Am. Rep. 422; Hoppaugh v. McGrath, 53 N. J. Law, 89, 21 Atl. 108. In Monteleone v. Insurance Co., 47 La. Ann. 1563, 18 South. 472, 56 L. R. A. 784, this court said that the exercise of the police power of the city may be erroneous, and is therefore subject to judicial control, "but courts should not interfere with it, unless on very clear grounds." In the present case, after a full hearing of experts, the unwisdom of the action of the city engineer is by no means demonstrated.

In connection with the estoppel, we give in the margin[1] the correspondence between plaintiff and the representative of the defendants, and between plaintiff and the city engineer; and we give also the proof of loss and that part of the petition relied upon in support of the estoppel, and also an extract from the testimony of the city engineer.

Thereby it appears that plaintiff, or its counsel, was under the impression that the city engineer was condemning the party walls

---

[1]The matter here referred to appears in the note at the end of this opinion.

because of the building ordinances in question; and the learned counsel for plaintiff frankly admit that they were not aware of the existence of the ordinance which allowed of the party walls being made use of in the reconstruction of the building; but we do not see why this error of plaintiff, or of its counsel, touching the grounds of the engineer's action, should give rise to an estoppel. The vital fact as the result of which the loss became total was the condemnation of the walls by the city engineer. The proof of loss and the petition asserted that fact. The theory of the proof of loss and of the petition as to the loss being total was predicated upon that fact. And whatever reference was made to the building ordinances was merely by way of explanation or justification of the action of the city engineer. Had plaintiff stated in the proof of loss and in the petition that the city engineer had assigned no grounds for his action, and that it, plaintiff, did not know upon what the city engineer founded himself, the proof of loss and the petition would have been just as good. Had plaintiff made the erroneous statement in question with a view to mislead and prejudice the defendant, there might be ground for estoppel; but, far from taxing plaintiff with duplicity in the matter, defendants seem to be able to discern something favorable to their side in the fact that plaintiff's making these statements was through error. Had the said statements, however honestly made, misled defendants to their prejudice, there might be estoppel; but nothing of that kind is pretended.

We do not wish to be understood as holding that the exemption from the liability clause in question is not inconsistent with the valued policy law. Upon that question we express no opinion.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set

aside, and that there now be judgment against the defendants, as follows:

Against the Teutonia Insurance Company of New Orleans in the sum of $5,000.

Against the Phenix Insurance Company of Brooklyn in the sum of $3,500.

Against the Metropolitan Fire Insurance Company of Chicago, Ill., in the sum of $2,500.

Against the London & Liverpool & Globe Insurance Company of England in the sum of $5,000.

Against the Royal Insurance Company of Liverpool, England, in the sum of $10,000, with interest in each case at the rate of 5 per centum per annum from July 6, 1908, until paid, the amount of the said judgments in principal and interest to be payable to petitioner, the Macheca Real Estate & Improvement Company, Limited, upon condition that it produce, as a condition precedent to the payment to it of the amount of the said judgments, the notes secured by the mortgage on the said insured property, and properly indorse as a credit thereon the amount received upon the said judgments, and that defendants pay all costs.

## NOTE.

### Plaintiff's Counsel to City Engineer.
"June 27, 1908.

"Dear Sir: As counsel for the New Orleans Real Estate Mortgage & Securities Company, owner of the building No. 714 Canal street, recently destroyed by fire, I beg to say that, for the purposes of adjustment with the insurance companies, and our plans in regard to rebuilding, it is vitally important that we should be advised by your department in regard to the following questions, to wit:

"1. Whether the front of the building as it still stands will be allowed to be used in reconstructing the building.

"2. Whether under the building laws, as construed by your department, the building may be reconstructed with the same type of construction as originally used.

"3. Whether, if the building is reconstructed of the same height as formerly, the present party walls may be used up to the floor joists of the second story.

"We would be obliged if you would give us a reply to these questions at your earliest convenience. Yours," etc.

### City Engineer to Plaintiff's Counsel.
"June 27, 1908.

"Dear Sir: Replying to yours of even date: "I beg to advise that no part of the existing party walls or front of the Hansell building, recently destroyed by fire, will be permitted by this department to be employed in the reconstruction of the said building along its original lines or in the construction of a new building of equal height. Yours very respectfully."

### Plaintiff's Counsel to Adjustment Company, Representing Defendants.
"June 29, 1908.

"Gentlemen: It having been suggested to me since my last interview with your Mr. Cooke that, under the existing buildings laws, neither the New Orleans Real Estate Mortgage & Securities Company nor the insurance companies for its account would be permitted to reconstruct of the same materials the building No. 714 Canal street, or to utilize for that purpose the front which remains standing or the party walls up to the joists of the second floor, as contemplated in the negotiations which I have had with you in regard to this matter, I have communicated with Mr. W. J. Hardee, city engineer, in reference to the matter, and am now in receipt of a letter from him, a copy of which I beg to enclose.

"In view of the position taken by Mr. Hardee in this matter, which seems to be borne out by the building ordinances of the city, with which I was not previously familiar, I beg to say, on behalf of the New Orleans Real Estate Mortgage & Securities Company, that there would seem to be no recourse for it but to claim as for a total loss. Yours," etc.

### Adjustment Company to Plaintiff's Counsel.
"June 30, 1908.

"My Dear Sir: Please be good enough to send me copy of your letter of the 27th inst. to Captain Hardee, city engineer. We cannot see that his decision in any wise affects the companies' contract liability. See lines 41 and 42 of policy. Yours," etc.

### City Engineer to Plaintiff.
"July 2, 1908.

"Dear Sir: Replying to yours of the 1st inst.:

"I beg to state that Messrs. Andry & Bendernagel, architects, and Mr. O. Walther, builder, on yesterday filed with this department plans and specifications to govern the re-erection of the Stevens building, which was recently destroyed by fire.

"These plans and specifications propose to utilize a portion of the old party wall between the Stevens and Hansell buildings; but, as this department is of the opinion that such wall is not competent to properly form a part of the new building, its use for such purpose has been condemned, and the above-named gentlemen

have been advised that the plans and specifications submitted by them to this department in connection with their application for a building permit are not approved, and that a building permit will accordingly not be issued. Yours," etc.

## Proof of Loss.
"July 2, 1908.

"A fire occurred on the 6th day of May, 1908, at about the hour of 6 p. m., by which the whole of the said property above described was destroyed, with the exception of the front wall, which, with certain repairs, might be employed in reconstructing the said building, if such reconstruction were permitted under the ordinances of the city of New Orleans, and a portion of the two side walls, which might also be so employed in reconstructing the said building. The cost of restoring said property to its original condition, employing for that purpose the front wall and portions of the two side walls as aforesaid, if such restoration were permitted under the ordinances of the city of New Orleans, regulating the erection, repair and alteration of buildings therein, would be forty-four thousand three hundred dollars ($44,300) for the property covered by the first item of the schedule, and including the whole cost of the party walls to be rebuilt, and twenty-eight hundred dollars for the property covered by the second item of the schedule.

"The city engineer of the city of New Orleans having, however, informed the assured that the restoration of the said property would be contrary to the building ordinances of the city of New Orleans and that said restoration will not be permitted; and that the said portions of the front and side walls hereinabove referred to will not be permitted by the city authorities to be employed in the reconstruction of said building, the assured claims that the loss resulting from the said fire is a total loss, and that it is entitled to be paid the full face value of all said policies."

## Plaintiff's Counsel to Adjustment Company.
"July 3, 1908.

"Gentlemen: As representatives of the Phenix Insurance Company, of Brooklyn, N. Y., the Metropolitan Life Insurance Company, of Chicago, Ill., the Teutonia Insurance Company, of New Orleans, London & Liverpool & Globe Insurance Company, of New Orleans, and the Royal Insurance Company, of Liverpool, England, we beg to notify you, on behalf of the New Orleans Real Estate Mortgage & Securities Company, that in view of the notification that that company has received from the city engineer, to the effect that, under the municipal ordinances of the city of New Orleans. the portions of the front wall and of the side walls of the Hansell building, 714–716 Canal street, which remain standing, will not be permitted to be employed in the reconstruction of the said building, it is necessary that side walls should be taken down and removed, together with the other wreckage resulting from the fire which occurred on May 6th.

"As the New Orleans Real Estate Mortgage & Securities Company is claiming a total loss of the property and the full face value of the policy of insurance thereon, we consider that the companies are entitled to the wreckage in question, or to a credit for the amount which the New Orleans Real Estate Mortgage & Securities Company may be able to realize therefrom, and on behalf of our client we beg to say that it is willing that you should take charge of and dispose of the said wreckage to the best advantage possible, provided that the work of removal be commenced within a reasonable period —say, one week from this date ; otherwise, the New Orleans Real Estate Mortgage & Securities Company will itself provide for the removal of the said wreckage upon the best terms obtainable, and in that event, will, of course, allow the companies credit for the net amount which may be realized therefrom. Yours," etc.

## Adjustment Company to Plaintiff's Counsel.
"July 9, 1908.

"Dear Sir: Replying to your esteemed favor of 3d inst., and advising that the papers submitted purporting to be proofs of loss are incorrect, in that you claim about $15,000 more than the insurance companies' contract liability, we beg to say, that this afternoon is the first opportunity we have had of seeing Captain Hardee (city engineer) and his ruling was based entirely upon the fact that the ordinance does not permit a building constructed like the Hansell building to be reconstructed at a height exceeding 70 feet, whereas the party walls of your building are 81 feet.

"There is no question that the front wall is intact, excepting a slight damage to the cornice, and could be used in replacing the building, unless the city ordinance prohibits, which is a matter that, as before stated, does not concern the insurance companies—see lines 41 and 42 of the policies—which clause was put in the policies to protect the companies against a contingency just like this one. Oftentimes we have losses on frame buildings where the city ordinance does not permit their reconstruction, but in no event are the companies liable for exceeding what it would cost to repair, or replace, with material of like kind and quality.

"The estimates of Mr. Walther and Mr. McCarthy, based upon your architect's plans and specifications are, in rough figures, $29,000. If these figures are correct—and we believe that they are absolutely so—that certainly would be the limit of the companies' contract liability.

"While it is a matter that does not concern the insurance companies the writer opines (and he is not alone in this opinion) that the iron front conforms to the present building ordinance regarding fireproof construction, which reads, in part:

"'Shall be constructed with all of bricks, stone, iron, or other hard, incombustible material,' etc.

"We do not know how we can prevent your clients from removing the whole, or any part of the building, but their so doing will not affect

the companies' liability, which, as before stated, is, in round figures, $29,000, and contemplates, according to your architect's specification, the use of the iron front.

"Expressly reserving all of the companies' rights, and without waiver of any description, we remain, Yours," etc.

Plaintiff's Counsel to Adjustment Company.
"July 10, 1908.

"Gentlemen: I beg to acknowledge receipt of your favor of July 9th. I note your statement that, under lines 41 and 42 of the policies, the companies are not concerned with the operation of the city ordinances prohibiting the reconstruction of the Hansell building.

"As a matter of course, this is a question upon which we differ. In my opinion, under the operation and effect of Act 135 of the General Assembly of the state of Louisiana for the year 1900, the companies are liable in this case as for a total loss, the lines of the policy referred to by you to the contrary notwithstanding. Yours," etc.

Adjustment Company to Plaintiff's Counsel.
"July 14, 1908.

"Dear Sir: New Orleans Real Estate Mortgage & Securities Company: Referring to papers submitted to us, purporting to be proofs of loss, we observe that you claim $44,100 damage, being for $41,300 on the building and $28,000 (we presume you mean $2,800) on the elevator, we beg leave to request that you please send us a detailed statement showing how this figure is arrived at, made up in conformity with the details furnished you by Mr. Otto Walther and Mr. McCarthy, contractors.

"If we fail to agree as to the amount of loss and damage by fire, we will then require an appraisement in accordance with the terms of the policies.

"Expressly reserving all of the companies' rights, we remain,    Yours," etc.

Plaintiff's Counsel to Adjustment Company.
"July 16, 1908.

"Gentlemen: I beg to acknowledge receipt of your favor of the 14th inst. in re New Orleans Real Estate Mortgage & Securities Company adjustment. As a matter of course, the insertion of the figures '$28,000' in the proofs of loss on the elevator was a mere typographical error. It should have been '$2,800.'

"In accordance with your request, I inclose herein a detailed statement showing how the figures included in the proofs of loss were arrived at.

"With regard to your statement that, if we fail to agree as to the amount of loss and damage, you will then require an appraisement in accordance with the terms of the policies, I beg to say:

"As stated in the proofs of loss, and also in the various other written communications to you, the assured in this case claims that the building including the elevator, was a total loss, and that it is entitled to recover the full face value of the policies, less the value of the wreckage, including the iron front, which I estimate at about $650. As a matter of course, if the assured is correct in its contention in this respect, there is no room for an appraisement, except, perhaps, with regard to the wreckage, because, under the terms of Act No. 135 of the General Assembly of the state of Louisiana for the year 1900, the value of the building is conclusively presumed to be the amount for which the policies are written; and in this connection, I may add that the estimates that I have received as to the value of the building show that it was actually worth more than the amount for which it was insured.

"Inasmuch, however, as there is a difference of opinion between the assured and the companies in regard to whether the building is a total loss, I see no objection to having an appraisement made upon the hypothesis of a partial loss, and am willing to agree to such an appraisement if you desire it, subject, however, to the following conditions:

"1. That the agreement to have an appraisement shall not be deemed or construed as a waiver by the assured of its claim that the loss is a total loss, and that it is entitled to recover the full face value of the policies, less the value of the wreckage.

"2. That the appraisement shall be made by the appraisers, not according to the basis announced in the policies, but in accordance with the measure of liability prescribed in cases of partial loss by Act No. 135 of the General Assembly of the state of Louisiana for the year 1900.

"3. That in the appraisement the appraisers shall include the cost of restoring the whole of the party walls, specifying this cost separate, so that neither party may be prejudiced with regard to the question of law as to the extent of the insurer's liability as to these items. Yours," etc.

Adjustment Company to Plaintiff's Counsel.
"July 21, 1908.

"Dear Sir: New Orleans Real Estate Mortgage & Securities Company.

"We beg leave to inclose one form of appraisement agreement, which is absolutely in conformity with the policy contracts, with request that you either sign it or signify your assent to do so and name your representative.

"We want an appraisement in strict accordance with the contract. In our humble opinion, no other would or should hold in law.

"Appraisers have nothing to do but to fix the value and the loss in accordance with the policy contracts submitted to them, and have nothing to do with city ordinances regulating the construction of buildings.

"Expressly reserving all of the companies' rights, we remain,    Yours," etc.

Plaintiff's Counsel to Adjustment Company.

"July 22, 1908.

"Dear Sir: In re loss New Orleans Real Estate Mortgage & Securities Company:

"In reply to your favor of even date relative to the above matter, we respectfully decline to sign or consent to the printed form of appraisement agreement sent us. Yours," etc.

City Engineer to Plaintiff's Counsel.

"August 5, 1908.

"Dear Sir: As you have heretofore taken up with me matters pertaining to the Hansell building on Canal street, recently destroyed by fire, I assume that you represent the owners of the same, and I am therefore addressing this communication to you for the purpose of advising that this department has this day issued a building permit to Messrs. Toledano & Wogan, representing Mr. C. C. Cordill, for the erection of a five-story brick building on the side which was occupied by Dreyfous, adjoining the Hansell building on the lake side, also recently destroyed by fire.

"The Hansell-Dreyfous building party wall has been condemned for re-use, and must be entirely rebuilt under the above-described permit. The demolition of this party wall is almost sure to cause the collapse of the front wall of the old Hansell building unless it be previously removed; and, as this department has condemned the re-use of the said front wall in connection with the erection of any kind of building on the Hansell site. I request that you promptly proceed to demolish this front wall in order to obviate any disaster that might occur out of the demolition of the Hansell-Dreyfous party wall. Yours," etc.

City Engineer to Plaintiff's Counsel.

"August 15, 1908.

"Gentlemen: Replying to yours of the 13th inst.: I beg to state that my letter of the 6th inst.. addressed to your Mr. C. P. Fenner, was not intended at that time as a peremptory order to demolish the front wall of the New Orleans Real Estate Mortgage & Securities Company (Hansell building) on Canal street, but merely what it expressed, viz., a request that you proceed to demolish the said wall, in view of the fact that it could not form any part of a new structure, and would have to be ultimately demolished, and for the further reason that a permit has been issued by this department for the erection of a building on the adjoining site, occupied by the Dreyfous Company before the recent fire, the erection of which building involved the rebuilding of the Hansell-Dreyfous building party wall, which work would doubtless cause a collapse of the existing front wall of the Hansell building.

"I will be frank with you and say that it has been my intention that, should the existing front wall of the Hansell building not be previously demolished when the demolition of the party wall had reached the point that would endanger the front wall of the Hansell building, to then condemn the same and order its immediate demolition. I trust, however, that you will not render such action necessary, but will promptly do what is reasonable and right to all interests concerned by proceeding without further delay to demolish the front wall of the Hansell building. Yours," etc.

City Engineer to Plaintiff.

"August 22, 1908.

"Gentlemen: I am advised by the building inspector of this department that the demolition of the Hansell building party wall has proceeded to a point which now endangers the front wall of the said Hansell building. Under the circumstances, the said wall being by this department deemed to constitute a menace to the public safety, you are peremptorily directed to immediately demolish the same. Yours," etc.

Plaintiff's Counsel to Adjustment Company.

"August 24, 1908.

"Gentlemen: We beg to hand you herewith copy of a letter which has been received by us as attorneys for the New Orleans Real Estate Mortgage & Securities Company from the acting city engineer, and we beg to notify you that, in accordance with the instructions therein contained. we shall commence the demolition of the front wall of the Hansell building and the party wall to-morrow. This for your information and such action as you desire to take. Yours," etc.

Adjustment Company to Plaintiff's Counsel.

"August 27, 1908.

"Gentlemen: We received on August 25th, at 5 p. m., your letter, dated August 24th, inclosing copy of letter written by W. F. Warren, acting city engineer, addressed to you under date of August 22, 1908, in which you notify us that, in accordance with the instructions of the acting city engineer, you will 'commence the demolition of the front wall of the Hansell building and the party wall to-morrow'; and, replying thereto, we beg to say that, in so far as the matter concerns the insurance companies, for whom we are acting as adjusters, we enter our protest against such demolition, the insurance companies taking the position that they are liable only to the extent of the restoration of the building as it was prior to the destruction of the same by fire. Yours," etc.

Plaintiff's Counsel to Adjustment Company.

"August 27, 1908.

"In re fire loss N. O. Real Estate Mortgage & Securities Company, Hansell building.

"Gentlemen: We beg to acknowledge receipt of your favor of the 27th inst. in reply to our letter of the 24th inst.. inclosing copy of letter written by W. F. Warren, acting city engineer,

of date August 22, 1908, peremptorily requiring us to at once demolish the front wall of the Hansell building. We note that you protest against such demolition, and we respectfully suggest that, as the city engineer is vested by law with the determination of such questions, it would be proper for you to direct your protest to him, and not to us, who are acting under compulsion.

"We further beg to advise you that, in obedience to the orders of the acting city engineer, we have entered into a contract, after the taking of bids from a number of contractors, with the Chicago Demolishing Company for the demolition of the walls of the said building, to which, after making allowance to the contractor for the débris, we are compelled to pay the sum of $150. This for your advice. Yours," etc.

### Extract from Plaintiff's Petition.

"Now, petitioners show that, on the 6th day of May, 1908, while all of the said policies were in full force and effect, a fire occurred on the said insured premises, which totally destroyed all of the said insured property, with the exception of a portion of the said walls, which remained standing, and which might, perhaps, have been employed in the restoration of the said building to its original condition, if such restoration had been permissible under the terms of the building ordinances of the city of New Orleans in force at the time of the said fire, and at the time of the issuance of the said policies.

"Petitioners show, however, that, under the terms and provisions of the said ordinances, and particularly of ordinance No. ———, it was not permissible to restore the said building to its original condition, nor to employ for that purpose any portion of the front and side walls aforesaid; and petitioner, the New Orleans Real Estate Mortgage & Securities Company, was forbidden by the authorities of the said city so to do.

"Petitioners further show that, both by reason of the comparatively insignificant value and importance of the said portions of the front and side walls of the said building, and by reason of the fact that it was impossible, in view of the city ordinances aforesaid, to restore the said building to its original condition, or to employ for that purpose the said portions of the said front and side walls, there was, as a result of the said fire, a total loss of the said property, within the meaning and intendment of Act No. 135 of the General Assembly of the state of Louisiana for the year 1900, and the defendants became and are liable respectively for the full amount of the policies aforesaid.

"In the alternative, and in any event, and even if, for any reason, it should appear to this honorable court that petitioners are not entitled to recover upon the said policies as for a total loss, then petitioners aver that each of the defendants is liable respectively for its proportion of such amount as would have permitted petitioners to restore the said property after the fire to its original condition; and petitioners aver that it would have cost to restore the said property to its original condition more than the total insurance on said building, which amounted in the aggregate to the sum of $48,000."

### Extract from Testimony of City Engineer.

"Q. Now, Captain, I will ask you this question right now: This wall of the Hansell building being constructed entirely of iron, can you tell us why it could not be used in reconstructing a five-story building over seventy feet high, fireproof?

"A. For the reason that both of the party walls, which supported that front and acted as an anchorage for it, were condemned, and had to be removed, and I would not have issued any building permit for the use of that wall, even if the wall was absolutely sound and could under the law be made to form a part of the building desired to be constructed, because it was almost certain—so certain in my mind—that, if these party walls were removed, the wall would not stand there of itself, but would have collapsed, that I would not have issued a building permit under those conditions.

"Q. But, Captain Hardee, if the wall was intact absolutely, and it was made of iron, and, therefore, capable of being used in the reconstruction of the building, even although the side walls had to be torn down, could not the builder stay that wall in such a way as to make it stand until the proper side walls were mortised into it?

"A. No, sir. In my opinion, that would not have been practicable—I mean that it could not possibly have been done with any reasonable expense. What I mean by that is that it was physically possible.

"Q. But without regard to the expenditure that would necessarily have been entailed in order to have done that, it would have been physically possible?

"A. Yes, sir; if the question of expense is not to be considered.

"Q. Then, as I understand your answer, your objection was that the wall might collapse in the process of demolition and reconstruction of the party walls?

"A. Yes, sir.

"Q. Is that your idea?

"A. That is it; yes, sir.

"Q. And that is the reason why you decided that that wall, even though it might be sound, could not be used in the reconstruction of that building, is it?

"A. Yes, sir.

"Q. Now, Captain Hardee, do I understand you further to state that, independently of the question with regard to the violation of the building ordinances of the city of New Orleans, you would not have issued a permit for the use of that front wall in the reconstruction of the building in any manner, shape or form, for the reason that the said walls had to be all torn down, and you would not have considered it safe to leave the front wall standing and tear the side walls down?

"A. That is my position; yes, sir."

### On Rehearing.

BREAUX, C. J. Defendant, through learned counsel, presents a number of points. The argument embraces questions not argued before the application for a rehearing.

Defendant's contention is that the court erred in holding that plaintiff was not bound by the issues alleged and the proof of loss.

Defendant pleads estoppel by record; further, that there was no good reason for holding that the loss was total, as it was partial.

The difference between the plaintiff and the defendant as to amount is about $7,000, which should, as contended by defendant, be deducted from the total amount heretofore allowed to plaintiff.

Defendant also urges that the city engineer's decision to take down the walls of the building was arbitrary and unlawful.

Further, that it was not incumbent upon defendant to do further than to protest, as it did, against the acquiescence of plaintiff—against the decision of the city engineer.

The foregoing is a summary of the different grounds for the rehearing.

We insert an outline of the facts.

Plaintiff has prepared plans and specifications to reconstruct the destroyed building, and called for bids to rebuild the building.

To this point there was no serious disagreement between the parties.

The adjusting agent of the defendant insurance company offered to pay the amount admitted by it as due on the basis of estimates of contractors.

From the date of this offer, disagreement began.

It may be that these disagreements would have been adjusted satisfactorily had it not been that the city engineer arrived at the conclusion to have the walls remaining after the fire taken down.

According to defendant these walls had a value. The ornamental iron front wall particularly. It is variously estimated from $6,000 to $12,000.

Plaintiff, having received notice of the decision of the city engineer through counsel, wrote to defendant's adjuster, notifying him that it would have to claim for a total loss, as the company could not use the iron front wall in question; that the idea for a partial loss was abandoned because of the city engineer's refusal to issue a permit, permitting the reconstruction of the building.

The defendant, through its agent, took issue with plaintiff about this wall, and said that it should not be taken down. The mild insistence ended with a protest on the part of defendant. There was nothing about it of an insistent character.

Plaintiff informed the defendant through counsel that the protest should be addressed to the city engineer; that the company was coerced. It was obliged to accept the situation.

Some of the witnesses testified that the front was not seriously injured; others thought differently.

The city engineer's decision remained as it had been given by him, and his orders were not very much opposed by any one.

The defendant, it strikes us, was somewhat mild upon the subject, while it does not appear that the plaintiff very actively opposed the order to take down the walls.

The defendant charges that plaintiff was not anxious to rebuild; that it had offered to sell the property, and that for that and other reasons the decision of the city engineer was cheerfully accepted.

It may have been the subject of the secret prayers of those interested in plaintiff, or their heart's desire. There is no testimony, however, showing that there was the least influence brought to bear by plaintiff upon the city authorities to refuse the permit.

Plaintiff may have thought of selling the property, or it may have deemed it to its

interest to construct a different building. The fact that it was its interest is not sufficient, with the testimony before us, to arrive at the most remote inference of an influence brought to bear by plaintiff in regard to the order not to rebuild.

Defendant remained content with its protest before mentioned.

The walls were taken down.

The iron front wall, the one that gives rise to the serious objection, was standing on the line of the sidewalk.

The city engineer refers to it as dangerous and threatening, and after the demolition of the side walls said that this front was left without support, and that it was a menace to the public, and for that and other reasons he ordered the front wall taken down.

The evidence is somewhat conflicting.

On rehearing we will not recall that which has been decided upon this particular point, as we do not think that it is determinative of the issues.

The binding effect of plaintiff's petition and its proof of loss, which presented an issue other than that the wall was taken down because it was a menace to the public, is referred to by learned counsel for defendant as a reason not to decide the issue alleged, and not another issue not alleged.

For reasons we will state later, when we will consider the city ordinances in regard to reconstructing buildings, we do not look upon this defense as controlling. But at this time we will remain content, in regard to this point, with the statement that the evidence introduced to prove the grounds upon which the city engineer based his refusal to permit the rebuilding of the building on the portion of the wall standing having been admitted without objection, under repeated decisions of this court, an issue is made by the testimony, which is now before us for decision.

Effect is given to evidence which is germane to the issue admitted without objection.

It does not appear that a change has been made in the issues particularly prejudicial to the defendant. At any rate, there is no good reason for a rehearing on that ground.

To quote an illustration in defendant's brief:

A state of fact lettered A is admitted to prove an issue, which not only proves it, but overlaps another issue lettered B. The court cannot decide the case on the issue lettered B, by reason of the fact that it is not germane, but entirely foreign, to the issues of the case.

We wish to answer that defendant, in not objecting to evidence introduced to prove issue lettered B, permitted evidence which goes to prove some demand which the evidence lettered A goes to prove.

The letter B represents an additional right to the same defense.

We would not thus particularize were it not that the premise predicated of the foregoing is made to do service in regard to another point. That point is that the lack of allegation was jurisdictional, that there was no due process of law, and that the plea of estoppel should be sustained.

After giving consideration to these different grounds, we have found ourselves unable to give them our sanction. We do not think that any of those pleas should be maintained.

To go further into the case, the policy of insurance sued on contained the following clause:

"This company shall not be liable for loss, caused directly or indirectly by order of any civil authority."

The policy was borrowed from the New York standard fire policy. A statute of our Legislature (Act No. 105 of 1898) made the standard policy a part of the insurance plan here. This subject will be discussed later.

Now as to the proof of loss: There was no suggestion in the proof of loss that the authorities ordered the walls to be demolish-

ed because they were a menace to the public. The order referred exclusively to ordinances requiring fireproof buildings to be put up, and substantially stated that the city authorities objected to a new building constructed of the same material and of the same fashion as the old building, and based their objection upon town ordinances to that effect.

Learned counsel for plaintiff, in drafting his petition, took for basis the requirements of the city ordinances in matter of reconstructing destroyed buildings, and substantially alleged that it, plaintiff, could not do otherwise, because of these ordinances, than accept the situation and insist upon a total loss.

The petition, as before stated, being limited to the point stated, defendant seeks to hold plaintiff to the allegation, and objects to the consideration of any issue arising from the testimony offered to prove that the city had ordered the walls to be taken down, because they were a menace to the public; dangerous to life; that this additional ground should not have been considered at all; that the plea of estoppel, and all the other pleas before stated, were a complete bar to the consideration of the last-mentioned point.

Plaintiff's proof of loss contained a lengthy and detailed statement of the action of the city authorities in ordering it not to seek to use any part of the remaining walls. Plaintiff stated in this proof of loss, substantially, that, on account of the peremptory order of the city authorities not to seek to rebuild the building as it was before the fire, it had been compelled to abandon the thought of reconstructing the building as it was before.

There was no suggestion in the proof of loss that the authorities ordered the walls to be demolished, because they were a menace to the public.

Another contention of the defendant is

128 LA.—3

that the condemnation of the walls was not legal by reason of the fact that it was not by the street commissioner, as it should have been, but by the city engineer.

The ordinances upon the subject are not very clear, it is true, but, taken as a whole, the city engineer seems to be vested with authority to condemn walls to be taken down, or, in case of violation of city ordinances, he can issue an order to prevent such violation in matter of reconstructing buildings.

We do not attach importance to the difference sought to be made between the action under the ordinance of the city and orders given by the fire department to take down a dangerous wall.

It is true that the policy contains a clause, before quoted, which seeks to limit the liability of the insurer; that is, that the insurer will not be held liable for the acts of the civil authorities, quoting from that portion of the policy quoted above.

But this law, in our view, has been repealed. It was adopted, we have seen, in 1898. In 1900 the Legislature of this state adopted the valued policy law (Act No. 135 of the session of the Legislature).

There is a conflict between the New York standard policy and the valued policy of 1900, for a valued policy statute does not confer a personal privilege which may be renounced.

The statute is one adopted as a measure of policy.

Without this clause to limit defendant's liability, the defendant has scant ground in its defense.

The city's arbitrariness in the premises is not evident.

It must be remembered that the motive was protection, to the end of diminishing fires and reducing the rate of insurance.

A familiar adage comes in properly enough: Salus populi suprema lex est. Observed with intelligence and moderation, it should not be condemned.

In one of the cases that we have had occasion to consult, under the valued policy statute, the insured had agreed in their policy in case of loss to let the loss be adjusted by arbitration. The court held that the valued policy law must prevail.

The valued policy is controlling, as it is a measure in public interest and in order to secure greater certainty in the contract of insurance.

In one of the decisions cited, infra, it was held that the valued policy statute must be regarded as a part of the policy of insurance, and the amount written in the policy as liquidated damages agreed upon by the parties, and that this is so, notwithstanding the policies inconsistent therewith.

Again, in another policy, it was decided, where a subject of fire insurance was real property, that the agreement between the company and the assured that the property should be considered personal was invalid, as in violation of the valued policy.

These points are sustained by the following decisions: Western Assurance Co. v. Phelps, 77 Miss. 625, 27 South. 745, a decision directly in point; Queen Insurance Co. v. Leslie, 47 Ohio St. 409, 24 N. E. 1072, 9 L. R. A. 45; Word v. Southern Mutual Insurance Co., 112 Ga. 585, 37 S. E. 897; Havens v. Germania Fire Insurance Co., 123 Mo. 403, 27 S. W. 718, 26 L. R. A. 107, 45 Am. St. Rep. 570.

Not having succeeded in our researches in finding a single decision to the contrary than that before expressed, and these views being of a convincing character, we must hold that the standard policy statute is repealed by the valued policy statute.

An attempt to limit the insurer's liability in conflict with the valued policy statute cannot be of any avail.

Something has been said about the mill type construction; that under the ordinances such a construction was possible, and that the building might have been reinstated under these ordinances without tearing down the front wall.

In the name of the plaintiff company, it was represented to the city department in charge that the new building would be constructed of the same material and after the same fashion as the old.

To this application the officer in charge replied that he could not consent to such a construction, for the reason that it would be in contravention of the public building law.

This excludes the possibility of erecting a new building on the remnants of the old, which we must hold, under the valued policy law, was a total loss.

In concluding, if there was danger, or if the parties were exposed to damages if the wall had fallen, the plaintiff would have been liable in damages.

That was decided in the Werlein Case, 42 La. Ann. 1046, 8 South. 435, 11 L. R. A. 361.

The court said that it was the property of plaintiff that might have been held in damages in case of damage by its fall.

For similar reason, in case of a fall and damages in this suit, plaintiff would have been liable.

For that reason it was proper not to incur the risk, but reasonably comply with the requirements of those in charge of the fire department of the city.

Plaintiff, in its petition on appeal, called attention to the fact that in the district court, although at first the Macheca Building Company was made one of the plaintiffs, that it was paid, and afterward, by order of the court, its case was discontinued.

The judgment will therefore be amended accordingly.

It is ordered, adjudged, and decreed that our judgment be reinstated; that it is amended by striking out the name of the Macheca Building Company; and that plain-

tiff, New Orleans Real Estate Mortgage & Securities Company remain as plaintiffs; and, as amended, the judgment is affirmed.