### SCANLAN et al. v. HOME INS. CO. et al.
### No. 2514.

Court of Civil Appeals of Texas. Beaumont.
Jan. 23, 1935.

Rehearing Denied Feb. 6, 1935.

Walter F. Brown, of Houston, for appellants.

Thompson, Knight, Baker & Harris, of Dallas, and Chas. C. McRae and Bryan & Bryan, all of Houston, for appellees.

COMBS, Justice.

This case originated in the district court of Harris county and is before us on transfer by the Supreme Court. On January 30, 1932, a three-story brick building belonging to appellants, Kate Scanlan, Lillian Scanlan, and Stella Scanlan, and located in the Houston business district, was damaged by fire to the extent of more than 50 per cent. of its value. The building was insured in four insurance companies, appellees herein, in the aggregate amount of $65,000. The proper authorities of the city of Houston refused appellants a permit to rebuild or restore the building using any part of the structure remaining for the reason that the fire ordinances of the city of Houston did not permit the reconstruction of it. Appellants filed with the insurers proper proofs and claimed the face amount of the policies as for total loss. The insurance companies refused payment. Appellants, as plaintiffs in the court below, filed a separate suit against each of the four companies, and each defendant filed answer denying liability. The policies being identical in form and the defenses urged by the several companies being the same, the suits were consolidated and trial of the consolidated suit was had to a jury.

In their petition plaintiffs alleged, among other things, that the building was destroyed to the extent of more than 50 per cent. of its value and that, acting under the ordinances of the city of Houston, which they specifically plead, the city engineer of the city of Houston had forbidden them the right to rebuild the building utilizing any part of the structure remaining, and that as a consequence the building was a "total loss" within the meaning of the Texas valued policy law. Vernon's Ann. Civ. St., art. 4929. During the trial the insurance companies withdrew their denial of liability and confined their contest to the amount of the recovery. They contended by pleading and proof that the building was not in fact a total loss, and that the measure of their liability was the cost of restoring the building in as good condition as it was in before the fire. They also assailed the validity of the fire ordinances and building code of the city of Houston on various grounds. They also contended by pleading and proof that the total value of the building before the damage by fire did not exceed $45,000 and that in any event recovery should be limited to that amount. Plaintiffs, by supplemental petition, leveled numerous special exceptions at the special defenses pleaded by the defendants carrying out their theory that the policies constituted a liquidated demand for their face amount. We will note here that the defendants did not seek to avoid the policies by any plea of fraud or that they were deceived or overreached by the plaintiffs in the making of the contract. At the conclusion of the evidence plaintiffs moved for an instructed verdict for the face amount of the policies. The motion was overruled, and the trial court submitted the case to the jury on special issues, in response to which the jury found that the building was not in fact a total loss, and fixed the cost of repair and replacement at $30,500. Plaintiffs moved the court for judgment non obstante veredicto for $65,000, which motion was overruled, and judgment entered in plaintiffs' favor for $30,500. Plaintiffs have duly perfected their appeal from that judgment. The insurance companies have not appealed, but contend here that the correct judgment has been rendered.

The ordinances of the city of Houston introduced in evidence are quite extensive, covering many pages of the statement of facts. For the purpose of this opinion it is only necessary that we make a brief statement of the nature of the ordinances with brief quotations from the pertinent provisions. In 1922 the city of Houston enacted an ordinance setting forth building restrictions, regulations, etc., for the city. In subsection (a) of section

1155 of the ordinance it was provided that: "It shall be unlawful to erect any building within that portion of the fire limits of the city of Houston hereinafter designated unless such building shall be of fireproof construction as the same is hereinafter defined." It then lists a large number of blocks which shall compose the fire limits referred to, including block 45, in which the building in question was located. It then defines "fireproof construction," as used in the ordinance. It is further provided in subsection (e) of the same section of the ordinance: "It shall be unlawful to reconstruct or repair any non-fireproof building within the limits set out in sub-section (a) hereof when the same shall have been damaged by a storm, fire, decay or other means as much as fifty per cent. of its value, exclusive of foundations, and in such case no permit shall be issued for the reconstruction or repair of said non-fireproof building."

It is without dispute that this ordinance of 1922, if given effect, would prevent the repair or restoration of the Scanlan building. It was damaged more than 50 per cent., in fact 70 per cent., of its value, exclusive of foundations, and it was not of fireproof construction within the meaning of the ordinance. It is likewise without dispute that except for the ordinance, the foundations and walls, or at least portions of them, could have been utilized in the restoration of the building, and that as a consequence it could have been restored at a cost considerably less than the cost of erecting a new building of the same type. There is also evidence to support the jury's finding that the building could be repaired and restored for a cost of $30,500. It is evident from his rulings that the trial judge considered the ordinances and building code of the city of Houston of no effect in determining the extent of loss. The correctness of such holding is the controlling question in this case.

For reasons which we will discuss later in this opinion, we have concluded that the ordinance of 1922, from which we have quoted briefly above, is valid as against the attacks which appellees now urge against it. Pretermitting here a discussion of those questions and assuming the validity of the ordinance, we will first consider the controlling question of whether it should be given effect in determining whether the building was a total loss. Under the facts there was a remnant of the building remaining which, but for the ordinance, a reasonably prudent owner, uninsured and desiring such a structure as the insured building was before the injury, could have utilized as a basis for restoring it. Therefore, we think it cannot be questioned that under the rule announced by our Supreme Court in such cases as Royal Ins. Co. v. McIntyre, 90 Tex. 170, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797, and Fire Ass'n v. Strayhorn, 211 S. W. 447, the building was not a total loss unless the ordinance which denied appellants the right to restore it rendered it so.

But it is equally apparent that if the ordinance be given effect, appellants' building was a total loss to them. The fire had so far destroyed it that the city had refused a permit for restoring it. The part of it which remained was in effect so much débris to be demolished and removed. Therefore, the real question to be decided here is: Was it reasonably within the contemplation of the parties to the insurance contracts that a fire loss thus rendered total by fire ordinances of the city of Houston should be considered total within the meaning of the policies of insurance? It is our conclusion that it was. Cooley, in his Briefs on Insurance, § 5032, says: "If a building covered by a policy is located within the fire limits of a city and is of such class that under certain conditions the city ordinances prohibit the repair or restoration of such building recovery may be had as for total loss." And in 26 Corpus Juris, 351, it is said: "If by reason of public regulations as to rebuilding of buildings destroyed by fire such rebuilding is prohibited the loss is total although some portion of the building remains which might otherwise have been available in rebuilding. So also if the insured building is so injured by the fire as to be unsafe and is condemned by the municipal authorities, the loss is total." We think the general rule thus announced by Mr. Cooley and Corpus Juris is unquestionably sound and is supported by the great weight of authority. The power of a city, by proper ordinance, to regulate the construction, reconstruction, and repair of buildings within its limits so as to prevent and abate fire hazards is of universal recognition. In fact, it is an essential attribute of municipal government under modern conditions. The proper exercise of such police power is for the public good and inures to the benefit of insurer and insured alike. Every one dealing with property within a city is presumed to recognize the existence of such power and to have knowledge of ordinances enacted in the exercise of it. So it has been often held that parties to an insurance contract are regarded as having contracted in view of pertinent municipal ordinances so that they become a

part of the contract. Hamburg-Bremen Fire Ins. Co. v. Garlington, 66 Tex. 103, 18 S. W. 337, 59 Am. Rep. 613; St. Paul Fire & Marine Ins. Co. v. Kitchen (Tex. Com. App.) 271 S. W. 893; Southland Life Ins. Co. v. Hopkins (Tex. Civ. App.) 219 S. W. 254, 260; Id. (Tex. Com. App.) 244 S. W. 989. In Southland Life Ins. Co. v. Hopkins, supra, Judge Hall of the Amarillo Court of Civil Appeals said: "It is a fundamental rule that contracting parties are conclusively presumed to have entered into their contract with full knowledge of all existing laws upon the subject which may affect the validity, formation, performance, operation, discharge, interpretation, or enforcement thereof, and that such laws enter into and become a part of the contract binding the parties. This rule applies with peculiar force to insurance contracts." The above case was reversed by the Supreme Court on other grounds. 244 S. W. 989. But we think Judge Hall's statement of the rule was in no way disturbed by the reversal and is unquestionably sound.

But appellees contend that even if it be conceded that as a general rule the fire ordinance of the city of Houston would be given effect so as to render the loss total, such rule has no application here for the reason that the parties, by certain stipulations in the policies, specifically contracted against such contingency. This contention is based upon the following stipulations appearing in each of the policies:

"This Company shall not be liable for loss caused directly or indirectly * * * by order of any civil authority."

"This Company shall not be liable * * * beyond the actual value destroyed by fire, for loss occasioned by ordinance or law regulating construction or repair of buildings, or by interruption of business, manufacturing process, or otherwise."

We think the first stipulation is subject to the construction that it does not relate to fire losses at all but to losses occasioned solely by order of civil authority, and that the second, which would limit liability to actual value destroyed by fire, etc., has reference to cases where the loss of the insured property is partial only and not to cases of total loss to which the valued policy law is applicable. But, conceding that the intent of the stipulations was to so contract against the effect of the laws and ordinances as to render partial a fire loss which otherwise would be total, thus limiting the liability of the insurer, such stipulations are ineffectual for such purpose. Being in contravention of the statute, they are void. This precise question was before the Supreme Court of Mississippi in the case of Palatine Ins. Co. v. Nunn, 99 Miss. 493, 55 So. 44. That case involved a fire loss rendered total because of a city ordinance which prohibited the reconstruction of the insured building which had been damaged by fire. Considering the effect of a stipulation in the policy of insurance, identical with the stipulation here involved, the court held that such provision attempting to limit liability had been "written out" of the contract of insurance by virtue of the valued policy law of that state. On this point, see, also, New Orleans Real Estate & Mortgage & Sec. Co. v. Teutonia Ins. Co., 128 La. 45, 54 So. 466, by the Supreme Court of Louisiana, where a similar holding was made. Both of the above cases, because of the similarity of facts and issues involved, are interestingly in point on the principal issues involved in the case before us. Both authorities fully support our holdings. While we have been cited to no Texas case, and have found none, directly passing upon the effect of the stipulations we are here considering, we think the controlling principles have been fully established by the decisions of our courts.

The business of insurance is of public concern and therefore subject to strict regulation and control by the state. Hence the rights of parties to contract with respect to insurance are limited by the laws of the state which are a part of every such contract. And any stipulation in an insurance policy which contravenes the statute is void. Export Ins. Co. v. Axe (Tex. Com. App.) 58 S.W. (2d) 39, 40; Reliance Ins. Co. v. Nichols (Tex. Civ. App.) 56 S.W.(2d) 479.

In the Axe Case, supra, the insured property was a gin building and machinery, and the fire insurance policy contained a stipulation which provided, in substance, that the machinery should for the purposes of the contract of insurance be treated and considered as personal property. In affirming the judgment of the Eastland Court of Civil Appeals, 36 S.W.(2d) 572, holding such stipulation void as tending to contravene and evade the valued policy statute, Judge Ryan, speaking for the Commission of Appeals, said: "The property in question having been found to be real estate, recovery for its loss by fire must be measured by article 4929, Rev. Stat. 1925, which provides that a fire insurance policy, in case of a total loss by fire of property insured, shall be held to be a liquidated demand against the company for the full amount of the policy, and the purpose there-

of was to make all such policies, in case of total loss, valued policies without reference to stipulations contained in them, which would give them a different character but for the statute which becomes a part of every such contract."

By parity of reasoning, if parties to an insurance contract cannot avoid the effect of the valued policy statute by contracting that certain property covered, which under the decisions of our courts is realty, shall be deemed to be personalty, it cannot be said that such purpose can be accomplished by contracting that a fire loss which under the law is total shall be deemed to be only partial. We have no doubt that any such attempt to nullify or avoid the effect of the statute by stipulations in the policy of insurance is without effect.

■■ Nor were such stipulations given validity by the action of the Board of Insurance Commissioners in approving the form of the policies, as contended by appellees. The duties of the State Board of Insurance Commissioners with respect to the promulgation of standard forms of policies are ministerial and not legislative in character. St. Paul Fire & Marine Ins. Co. v. Kitchen (Tex. Com. App.) 271 S. W. 893. The board can exercise only such authority as is conferred upon it in clear and unmistakable terms by the Legislature. And its authority will not be extended by inference, but must be strictly construed. Commercial Standard Ins. Co. v. Board of Ins. Com'rs (Tex. Civ. App.) 34 S.W. (2d) 343 (writ refused).

■ But appellees contend further that appellants are not entitled to recover the face amount of the policies for the reason that the value of the insured building was much less than the $65,000 for which it was insured. Appellees seek to invoke the rule that it is contrary to the policy of the law that an assured shall profit by a fire, citing Camden Fire Ins. Ass'n v. Sutherland (Tex. Com. App.) 284 S. W. 927. The rule has no application here. In the cited case the insured property was personalty and therefore the valued policy law did not apply. Here the property is realty and the effect of the statute is to make the policy a liquidated demand. And there is no suggestion by pleading or proof that the amount of insurance carried by appellants was induced by fraud or deceit. On the contrary, by bill of exception in the record it is shown that appellants offered to prove that before the fire the insurance was increased from $50,000 to $65,000 at the instance of Mr. Torrey, agent of the appellees, who suggested that the building was underinsured. The

building being a total loss and there being no element of fraud involved, it is immaterial that the insured building may have been of less value than the insurance carried against it. In fact, the evidence is not conclusive that it was of less value but that is not material. The policies of insurance constituted a liquidated demand for their full amount, precluding all inquiry on the question of the value of the insured property. Article 4929, Rev. St. 1925 (Vernon's Ann. Civ. St. art. 4929); Drummond v. White-Swearingen Realty Co. (Tex. Civ. App.) 165 S. W. 20; Export Ins. Co. v. Axe (Tex. Civ. App.) 36 S.W.(2d) 572, affirmed (Tex. Com. App.) 58 S.W.(2d) 39. Were this not so, an inquiry as to true value might be opened in every case of total loss of insured real property destroyed by fire, thus rendering nugatory our valued policy law. For an interesting discussion of this point, see opinion of Judge Hickman in the Axe Case (Tex. Civ. App.) 36 S.W.(2d) 572, 574.

This brings us to a consideration of appellees' propositions attacking the ordinance. Appellees contend that: (a) It was repealed by a subsequent ordinance enacted in 1930, which later ordinance is not effective to prevent the reconstruction of the building. (b) Even if not repealed, the insured building was erected long before the enactment of the ordinance of 1922, and to give it effect in preventing the restoration of the Scanlan building would be to deprive the owners of their property without due process of law. We will notice these contentions in order.

■ The contention that the ordinance of 1922 was repealed by a subsequent ordinance is based upon the following facts: In 1930 the city of Houston enacted an ordinance which is designated as a building code. It is quite extensive, covering many pages of the statement of facts. It sets out in detail the building requirements, defines fireproof construction, etc., and also provides for certain fire zones. Section 1601 of said code, relating to the fire zones, is as follows: "For the purpose of this code the city of Houston is declared to be and is hereby established a Fire District and said fire district shall be known and designated as Fire Zones 1, 2, 3 and 4, and shall include such territory or portions of said city as outlined in an ordinance of said city entitled 'an ordinance creating and establishing fire zones in the city of Houston.' Whenever in such ordinance creating and establishing fire zones, reference is made to any fire zone, it shall be construed to mean one of the four fire zones designated

and referred to in this Chapter." The concluding section, 4602, reads: "All ordinances in conflict with this ordinance are hereby repealed." It was agreed by the parties upon the trial that the city secretary of Houston, if called as a witness, would testify that there was not, at the time of the passage of the building code of 1930, any ordinance creating and establishing fire zones in the city of Houston, and that said city has not since passed any ordinance creating or establishing fire zones or defining fire zones Nos. 1, 2, 3, and 4. These facts destroy the contention that the building code of 1930 had the effect of repealing the provisions of the ordinance of 1922 relating to fireproof construction of buildings. A reading of the code of 1930, from which we have quoted above, shows clearly that it depends for its enforcement in that regard upon the establishment of the fire zones referred to in the quoted portion. In effect appellees concede this, but in substance contend that it nevertheless was effective in repealing the prior ordinance on the subject, and that the city of Houston was without authority, under either ordinance, to prevent the reconstruction of the building in question. We think it would be contrary to experience and reason for us to assume that the lawmaking body of the city of Houston intended to thus repeal its laws relating to fire hazards and leave the city wholly without protection in that regard. On the contrary, the whole course of legislation, as reflected by the ordinances introduced in evidence, is to safeguard the rights of the public with respect to the creation and abatement of fire hazards within the fire limits of the city. It was plainly the intent, we think, that the prior ordinance of 1922 should remain effective until the provisions of the building code of 1930 relating to fire hazards should be made effective by the establishment of the fire zones referred to. Since these provisions have not been made effective, they do not conflict with the provisions of the prior ordinance, and hence do not repeal them.

■ In support of their contention that the ordinance in question authorizes the taking of property, without due process of law and is, therefore, void, appellees cite us to the cases of Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 514, 19 A. L. R. 1387, and Crossman v. City of Galveston, 112 Tex. 303, 247 S. W. 810, 812, 26 A. L. R. 1210, both by the Supreme Court. Neither of the cited cases condemns the ordinance here involved. In each of the cited cases the ordinance under consideration was invalid for the reason that its scope was not limited to the objects for which the police power may be properly invoked in derogation of private property rights. Thus in the Crossman Case the ordinance provided for the summary condemning and removal of dilapidated wooden buildings irrespective of whether the building involved was in fact a nuisance. In referring to the scope of the ordinance, Chief Justice Cureton pointed out: "It is not limited to those instances where the dilapidated building may 'hurt or annoy the lands, tenements, or hereditaments of another.' It is not confined to those dilapidated buildings which endanger life or health, violate the laws of decency, or obstruct the reasonable and comfortable use of property, or which are subversive of public order, decency, or morals, or which constitute an obstruction of public rights. It amounts merely to a general condemnation of dilapidated buildings as nuisances, and authorizes their destruction." And Judge Cureton thus stated the holding of the court: "What we have held here is that this ordinance, general in its terms, embracing all dilapidated buildings, does not define any object which is subject to summary destruction, and is therefore void." In the Spann Case the ordinance prohibited the construction of any business house within a residence district, except with the consent of three-fourths of the property owners of the district. The real issue involved in the case, therefore, was, as stated by Chief Justice Phillips, "whether under the authority of the police power the citizen may be denied the right to erect, and in effect the right to own, a store house in a residence portion of a city, for the conduct of a lawful, inoffensive and harmless business." "Its object," said Judge Phillips, "is not to protect the public health, safety or welfare from any threatening injury from a store, but to satisfy a sentiment against the mere presence of a store in a residence part of the City." It was held that the police power could not be invoked to accomplish such purpose.

The ordinance we are considering is free of the vice of going beyond the proper and legitimate exercise of the police power. It is clear and definite in its object, which is to promote public safety by preventing and abating fire hazards within a clearly defined business district of the city of Houston; it is not general but definite in its terms setting forth in detail the kind, character, location, and condition of buildings to which it shall apply, and specifies fully and in detail the type of construction necessary to meet its re-

quirements for fireproof construction within the fire district to which it relates. In both of the cited cases our Supreme Court recognized the validity of such an ordinance. We have already quoted the holding of Judge Cureton in the Crossman Case. In the Spann Case, which is cited and discussed with approval in the Crossman Case, Judge Phillips said:

"The police power is founded in public necessity, and only public necessity can justify its exercise. The result of its operation is naturally, in most instances, the abridgement of private rights. Private rights are never to be sacrified to a greater extent than necessary. Therefore, the return for their sacrifice through the exercise of the police power should be the attainment of some public object of sufficient necessity and importance to justly warrant the exertion of the power.

"The public health, the public safety, and the public comfort are properly objects of this high importance; and private rights, under reasonable laws, must yield to their security."

It follows from what we have said above that it is our conclusion that the trial court erred. in refusing appellants' motion for a peremptory instruction for the face amounts of the policies sued upon. The judgment of the trial court will, therefore, be reformed so as to award judgment for appellants and against appellees in the following amounts: Against the Home Insurance Company, $15,-000; against the Fidelity-Phenix Fire Insurance Company, $17,500; against New Hampshire Fire Insurance Company of Manchester, $15,000; against Ætna Insurance Company of Hartford, Conn., $17,500—together with interest on the amounts awarded at the rate of 6 per cent. per annum from the 4th day of March, 1932. As so reformed, the judgment of the trial court is affirmed.

## On Rehearing.

Appellees, in their motion for rehearing, insist that we have decided this case upon a legal theory wholly different from that urged by appellants in the trial court and in this court, in that, as they contend, recovery was sought by appellants wholly upon the theory that the ordinance of 1930, and not the ordinance of 1922, prohibited the reconstruction of the building in question. Such contention is in the face of the record, which is to the contrary. Appellants specifically pleaded the provisions of the ordinance of 1922, upon which we based our opinion, and introduced them in evidence, in support of their contention that their building was a total loss. Appellees themselves undertook to show that said ordinance of 1922 had been repealed by the building code adopted in 1930, and to that end specifically pleaded such fact and introduced in evidence portions of such code in an effort to support the contention. Our original opinion discusses the issues as made by the record and presented by the briefs of the parties.

The motion for rehearing is overruled.