367 So.2d 74 (1979)
Joseph A. NAVARRO and Blue Cross of Massachusetts, Inc. Blue Shield of Massachusetts, Inc.
v.
Bosit BOMMARITO, d/b/a Westbank Union Cab Company, Cheryl M. Laballe, and Central National Insurance Company of Omaha, Nebraska.
No. 9695.
Court of Appeal of Louisiana, Fourth Circuit.
January 9, 1979.
Rehearing Denied February 15, 1979.
*75 Herman M. Schroeder and John S. Sciambra, New Orleans, for plaintiffs-appellees.
Philip A. Gattuso, Gretna, for defendant-appellant.
Before LEMMON, BOUTALL and BEER, JJ.
LEMMON, Judge.
The appeal by defendant Bosit Bommarito in this automobile accident case asserts (1) that plaintiff failed to produce evidence of Bommarito's vicarious liability for the negligence of Cheryl Laballe, who was driving a West Bank Cab owned by Bommarito in the collision in which plaintiff sustained the injuries in suit, and (2) that the evidence does not support the trial court's awards for pain and suffering and for past and future lost earnings.

I
In his petition plaintiff named "Bosit Bommarito, d/b/a Westbank Union Cab Company" as a defendant and alleged that Bommarito owned the cab and that Miss Laballe, another defendant, was driving the cab in the course and scope of her employment with Bommarito. He further alleged that defendant Central National Insurance Company insured the cab owned by Bommarito. The answer, filed jointly by Central National, Miss Laballe and "Bosit Bommarito, d/b/a Westbank Union Cab Company", denied each allegation of the petition, except to admit Central National had issued an insurance policy covering "the vehicle owned by defendants (sic) Bosit Bommarito, d/b/a Westbank Union Cab Company". Contributory negligence was also pleaded.
In preparation for a pre-trial conference plaintiff submitted a proposed pre-trial order, which stated:

"II
"In view of the answer filed by defendants, it appears that all of plaintiffs' allegations, except, as to the name and status of the three defendants, are at issue. Defendants' allegations contained in their answer, in the alternative, are also at issue".
Defendants then filed a pleading entitled "Defendants' Inserts for Pre-Trial Order", which stated in pertinent part:
"2) Contested issues are all of plaintiffs' allegations as to negligence, contributory negligence, and quantum".
The pre-trial order was thereafter amended three times (once by defendants) as to other points, but the list of contested issues was never changed. When the matter proceeded to trial, neither side called Bommarito or Miss Laballe as a witness. After trial the court rendered a judgment awarding plaintiff an amount in excess of the limits of Bommarito's insurance policy.
In an application for new trial defendants argued plaintiff's failure to prove Bommarito's vicarious liability. After the application was denied, Central National paid plaintiff the amount of its policy limits. Bommarito then obtained new counsel and perfected this appeal.

*76 II
Plaintiff contends admissions by Bommarito's prior counsel in pleadings filed in pre-trial proceedings made it unnecessary to produce proof on the issue of vicarious liability.
One of the principal purposes of pre-trial proceedings is to narrow the issues of the litigation to those which are contested and to dispense with proof on the issues which are not contested. C.C.P. art. 1551, relative to pre-trial procedure, allows the court to render an order (which, of course, may be prepared by the parties) that, among other things, "limits the issues for trial". The article further provides that the order, unless modified to prevent manifest injustice, controls the subsequent course of the action.
In the present case defendants in their answer alleged a dispute as to the issue of Bommarito's vicarious liability. However, in their subsequent pre-trial pleadings defendants, by expressly stating the only contested issues, implicitly notified plaintiff that vicarious liability was no longer a contested issue.
In reliance on the pre-trial order plaintiff omitted evidence of the fact that Miss Laballe was in the course and scope of employment at the time of the accident. Since the issue of vicarious liability was excluded from the contested issues listed in the pre-trial order which controlled the course of the proceeding, and since there was no suggestion prior to or during trial that the pre-trial order should be modified in the interest of justice, we decline to consider the issue raised now on appeal by new counsel.[1]

III
Quantum is the second issue raised by Bommarito's appeal.
In the November 23, 1975 accident plaintiff sustained a fractured nose, facial lacerations, a separation of the sternoclavicular joint, a fracture of the tenth rib, a cervical strain, contusions of the knee, elbow, and upper arm, as well as general bruises and contusions. He was hospitalized for 11 days following the accident.
Dr. James Day, a plastic surgeon, repaired the facial lacerations in the emergency room and on December 2 surgically realigned the fractured nose. After two outpatient follow-up visits in December, plaintiff never returned to Dr. Day.
In May, 1976 plaintiff consulted Dr. Daniel Adams, an otolaryngologist, who diagnosed a saddle nose depression and nasal septum deviation, noting that the latter protrusion obstructed plaintiff's left nostril. Dr. Adams surgically straightened the septum to improve plaintiff's breathing, a procedure which required three days of hospitalization. Two weeks later plaintiff reported his breathing had improved. In May, 1977 plaintiff returned for advice on the saddle depression deformity, and Dr. Adams recommended further surgery, which plaintiff declined. At trial plaintiff complained that he still had difficulty breathing.
For his orthopedic injuries plaintiff was attended immediately after the accident by Dr. Arthur Kleinschmidt, an orthopedic surgeon. After an unsuccessful attempt at closed reduction of the dislocation, the doctor recommended against surgery and prescribed medication, limitation of activities and exercises. By February, 1976 there was only a slight limitation of shoulder motion, but plaintiff continued to complain of pain in the joint. In subsequent examinations the knee and neck injuries eventually cleared, but the doctor continued to report the slight motion deficit noted previously. At plaintiff's last visit to Dr. Kleinschmidt on May 31, 1976, he was advised to return in one month, but did not. *77 Plaintiff did not seek further medical care prior to the January, 1978 trial, but he never returned to work as a longshoreman.
As to the extent of plaintiff's disability, Dr. Kleinschmidt estimated plaintiff would have a 15% partial, permanent anatomical disability of the right extremity, which could be the source of pain or tenderness or of arthritic change. He added, however, that plaintiff should be "near normal" from a functional standpoint. In response to the only question about plaintiff's ability to return to work as a longshoreman, he stated he had advised plaintiff during treatment that he could eventually return to this type of work.
Dr. A. W. Dunn, an orthopedic surgeon that plaintiff had consulted during the two months immediately following the injury, noted only "a little discomfort on shoulder motion" in December, 1975 and the following month observed plaintiff had regained full range of motion, but still had some discomfort. At trial the doctor stated that no surgery or further treatment was indicated, because this type of injury does well if left alone. He added that normal function usually returns after this injury, the only effect being visual prominence of the proximal end of the clavicle. He opined that plaintiff's injury should not cause problems in performing manual labor as a longshoreman in the hold of a ship, since this type of injury is "compatible with very strenuous use of the upper limb".
The trial court awarded $22,500.00 for pain and suffering, $4,427.65 for medical expenses, $2,032.00 for property damages, $8,500.00 for lost earnings, and $30,000.00 for future lost earnings. The awards for medical expenses and property damage are not contested on appeal, and the award for pain and suffering is clearly within the wide discretion accorded the trial judge by C.C. art. 1934(3).
However, the record does not support an award of $8,500.00 for lost earnings. Plaintiff's earnings at the time of the accident were almost $600.00 per month. At the time of his last orthopedic examination in May, 1976, six months after the accident, he exhibited some motion limitation, but there was no medical evidence that any disability to work as a longshoreman existed or was expected to continue after June, 1976. Plaintiff's own assertion that he was still unable to return to work as a longshoreman at time of trial because of the condition of his shoulder simply was not supported by the consistent medical evidence.
Accordingly, the award for lost earnings must be reduced to $4,200.00 ($600.00 × 7 months), and the award for future lost earnings or impairment of earning capacity must be set aside.
For these reasons the judgment of the trial court is amended to reduce the award for lost earnings from $8,500.00 to $4,200.00 and to delete the $30,000.00 award for future lost earnings. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
On application for rehearing plaintiff argues that the trial court awards relating to wages were modified without substantial basis.
The reduction of the award for past lost wages and the reversal of the award for future lost wages (or impairment of earning capacity) were based on the burden of proof and the determination of the sufficiency of evidence. Plaintiff had the burden to prove his losses. That burden was not discharged as to loss of wages when the only proof of continuing disability was plaintiff's statement and the actuary's mathematical computation. Some medical proof of this fact was necessary, and there was absolutely no medical proof of any condition disabling plaintiff from employment after May 31, 1976.
NOTES
[1] The legal counsel provided by Bommarito's insurer possibly overlooked a valid personal defense which perhaps should have been presented on his behalf. Nevertheless, Bommarito agreed to and accepted that representation, and this matter is properly regarded as one between the insured and the insurer and/or its counsel which might give rise to other consequences, but which does not affect the present litigation with plaintiff.