MARVIN, Judge.
The defendant insurer appeals judgments in two consolidated cases which awarded each of three plaintiffs $100 a day hospitalization benefits plus LRS 22:657 penalties and $1,000 attorney fees. Plaintiffs seek additional attorney fees in answers to the insurer’s appeals.
We affirm the award to Johnny Hassen which totalled $9,600 and $1,000 attorney fee. We amend to reduce Mrs. Hassen’s total award from $7,200 to $3,600 and Mr. Harris’s total award from $17,800 to $16,-400. We amend to increase the attorney fee awarded from $1,000 to $1,350 to plaintiff Mrs. Hassen and to plaintiff Harris. As amended and recast, the judgments are affirmed.
THE INSURER’S CONTENTIONS
The primary argument of the insurer is based on the fact that each plaintiff answered NO to the question on the application whether the policy applied for would REPLACE OR CHANGE EXISTING COVERAGE. The insurer contends that this answer was, in effect, a misrepresentation by each insured about other policies of insurance each had purchased that would pay a daily amount for hospitalization. The insurer states that it would not have written the policies in question had it known that these plaintiffs were excessively insured and for that reason, the judgments should be reversed or modified, at least, to disallow penalties and attorney fees. The insurer also argues that the trial court erred in evidentiary rulings and calculated the benefits in a manner contrary to the policy provisions.
The insurer alternatively argues that the policies at issue are not “health and accident insurance contracts” under the Insurance Code and that the applicable penalty statute is not LRS 22:657(A) for double the policy proceeds, but § 658 for 12 percent of the proceeds.
FACTS
Each plaintiff purchased from the insurer in November 1982 a HOSPITAL INCOME POLICY that provided $100 a day for the insured’s hospitalization for accidental bodily injury or sickness. The benefits were payable beginning with the first day of hospitalization for accidental injury and with the second day of hospitalization for sickness.
In March 1983 Mr. and Mrs. Hassen each purchased from the insurer a HOSPITAL CONFINEMENT INDEMNITY COVERAGE policy that provided $100 a day for the insured’s hospitalization for an accidental bodily injury.
SARAH HASSEN
Mrs. Hassen was first hospitalized from December 1 until December 13, 1982. She alleged in her petition that she was hospitalized for sickness, but at trial, and without objection, she testified that she was hospitalized for injuries she sustained in an automobile accident. When Mrs. Hassen later offered the suit record of her accident claim, the insurer objected on the grounds that that record would enlarge or go beyond the scope of Mrs. Hassen’s petition. The trial court did not err in overruling this objection. The pleadings had already been enlarged by Mrs. Hassen’s earlier testimony about why she was hospitalized and the court record of her accident claim merely corroborated her testimony that was not objected to.
*1033 Mrs. Hassen was again hospitalized from July 18 to July 24, 1983, for what she described as stomach cramps or sickness. Although she was hospitalized for a total of 20 days (December 1-13, 1982, and July 18-24, 1983), Mrs. Hassen prayed for, and the trial court awarded her the benefits for 18 days under both policies. Clearly the HOSPITAL CONFINEMENT POLICY issued in 1983 did not “cover” her 1982 hospitalization whether for sickness or accidental injury. Similarly, the HOSPITAL CONFINEMENT POLICY covered only Mrs. Hassen’s hospitalization for accidental bodily injury. Even though that policy was in effect when she was hospitalized in July 1983, that policy did not “cover” her hospitalization for sickness.
Mrs. Hassen’s cause of action against the insurer under each policy is purely contractual and we notice on our own accord the absence of a cause of action on the 1983 policy. CCP Art. 927. Compare Evans v. West, 357 So.2d 916 (La.App. 2d Cir.1978); Rivers v. Fireman’s Fund American Insurance Co., 316 So.2d 182 (La.App. 4th Cir.1975), writ denied.
Mrs. Hassen’s 1982 HOSPITAL INCOME POLICY covered both her 1982 and 1983 hospitalizations, from the first day of her hospitalization for accidental injury and from the second day of her hospitalization for sickness. She should have been awarded $100 per day for 19 of her 20 days of hospitalization or $1,900, notwithstanding that she sought and only prayed for $1,800. Legrone v. New Orleans Public Service, 415 So.2d 997 (La.App. 4th Cir.1982). In her answer to the insurer’s appeal, however, she did not seek to increase the number of days for which benefits were awarded and we cannot increase the benefits in this respect. CCP Art. 2133; Jones v. Winston, 437 So.2d 889 (La.App. 2d Cir. 1983).
We shall therefore amend the judgment to allow Mrs. Hassen only the policy benefits of the first policy for 18 days of her December 1982 and July 1983 hospitalizations.
JOHNNY HASSEN
The judgment awarded Johnny Hassen $4,800 as the amount due for his hospitalizations during the policy periods, plus the penalty and attorney fee. Except to the extent hereafter mentioned, the calculation of this award is not at issue in this appeal.
GREGORY HARRIS
Harris was hospitalized on seven occasions in different hospitals for a total of 89 days from December 1982 through February 1985. Harris did not allege in his petition or include, with the dates and locations of his hospitalization that were included in the pre-trial order as “Facts Not in Dispute,” the reason for each hospitalization. The medical records that Harris introduced to prove the occurrence of two “contested” hospitalizations show that one admission was for complaints of chest pain and the other was for influenza. He did not explain or offer any evidence whether he was hospitalized for sickness or for accidental injury on the other occasions. Harris’s policy clearly provides that the daily benefits for hospitalization for sickness begin on the second day of the insured’s hospitalization.
In an action on an insurance policy, the insured has the burden of proving facts which bring his claims within the coverage of the policy. Macaluso v. Watson, 188 So.2d 178 (La.App. 4th Cir.1966), writ denied; Palmer v. Turner, 252 So.2d 700 (La.App. 1st Cir.1971). We cannot assume that Harris was hospitalized for accidental injury on the other five occasions so as to be entitled to benefits on the first day of each hospitalization. This is not an “exclusion” of coverage which the insurer has the burden of proving, but a simple fact of basic coverage which the insured must prove. Compare Bonner v. United States Fire Ins. Co., 494 So.2d 1311 (La.App. 2d Cir.1986), writ denied. Under these circumstances, Harris should not have been allowed first day coverage for the seven hospitalizations. We shall amend to reduce the judgment accordingly.
*1034 TERM OF THE HARRIS POLICY
Harris testified that he paid the premiums on this policy until February 1985, when he contacted a lawyer about his unpaid claims. The insurer’s underwriter testified that Harris’s policy “lapsed” on May 24, 1984, because of nonpayment of premiums. When evidence was offered to corroborate this testimony, Harris objected that this evidence would go beyond the scope of the pleadings and pre-trial order. The objection was sustained because the issue of nonpayment of premiums had not been raised in the pleadings or in the pretrial order. The insurer made a proffer. CCP Art. 1636.
The insurer urges evidence of nonpayment of premiums should have been admitted and would preclude any benefits for Harris’s two hospitalizations after the lapsing of the policy.
In the pre-trial order, the dates and locations of plaintiff’s hospitalizations in July-August 1984 and January-February 1985, as well as the dates of the insurer’s receipt of notice of these two confinements, are identified as “Facts Not in Dispute.” The “Contested Issues of Fact” contained in the pre-trial order do not state whether the lapse of the policy because of nonpayment of premiums is a contested issue of fact. The insurer's underwriter, who testified that the policy lapsed, repeatedly explained that Harris’s claims were denied “because of excessive insurance.” Harris testified he was never told why his claims were not paid and he paid the premiums through February 1985 and was never notified that his policy had been cancelled.
In response to Harris’s request for admissions, and before the pre-trial order was filed, the insurer admitted that this policy “had been issued and had not been can-celled” as of May 14,1985. Nothing in the record indicates that the insurer made any attempt to qualify, withdraw or negate its admission. The admitted fact that the policy had not been cancelled as of May 14, 1985, must be deemed conclusively established. CCP Art. 1468. Lapse of the policy because of nonpayment of premiums was not suggested until the trial was in progress, after the entire suit record had been admitted into evidence.
The pre-trial order controls the subsequent course of an action unless it is modified at trial to prevent manifest injustice. CCP Art. 1551. The insurer did not seek modification of the pre-trial order, either before or during trial. The insurer did not assert a lapse of the policy or nonpayment of premiums as an affirmative defense in its answer or as a contested issue in the pre-trial order. The insurer conclusively and unqualifiedly admitted that the policy had not been cancelled as of a date after Harris’s last hospitalization. Under the circumstances of this record, we find no abuse of the trial court’s discretion in denying admissibility or consideration of evidence on an issue not previously identified as contested. Navarro v. Bommarito, 367 So.2d 74 (La.App. 4th Cir.1979), writ denied; Sibley v. Menard, 398 So.2d 590 (La. App. 1st Cir.1980), writ denied.
THE ALLEGED MISREPRESENTATION; AND “EXCESSIVE” INSURANCE
An insurer may not avoid liability on the basis of misrepresentations in an application for health and accident insurance unless it establishes that false statements materially affecting the insurer’s risk were made by the applicant with intent to deceive. LRS 22:619; Martin v. Security Industrial Ins. Co., 367 So.2d 420 (La. App. 2d Cir.1979), writ denied.
The applications for these policies asked whether the coverage applied for would “replace or change existing coverage.” Plaintiffs answered that it would not. We agree with the trial court’s conclusions that the question in the application did not clearly ask whether the applicant had other insurance policies in effect. We agree that the ambiguity, if any, must be construed against the insurer, and that plaintiffs could have truthfully answered that these policies would not or did not replace or change existing coverage, even though each plaintiff had other similar insurance coverage. Although the insurer’s *1035 underwriter testified that these policies would not have been issued had it known of plaintiffs’ policies providing similar coverage, nothing in the applications or the policies would alert an applicant that the insurer considered the disclosure of other coverage to be material to the risk assumed. Compare Cason v. Pan-American Life Ins. Co., 338 So.2d 138 (La.App. 2d Cir.1976).
Plaintiffs’ response to the question about replacement or change of coverage does not relieve defendant of its liability under these policies.
PENALTIES
The insurer contends penalties should not have been awarded because its reason for not paying these claims — plaintiffs’ failure to disclose in their applications the existence of policies providing similar coverage in an “excessive amount” — was a “valid” reason. The insurer also contends any assessment of penalties should be limited to 12 percent of the benefits awarded.
LRS 22:657(A) provides:
All claims arising under the terms of health and accident contracts issued in this state ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. * * *
Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court. (Emphasis added.)
Defendant argues these policies are not “health and accident” policies and that they should be governed by § 658, which provides for penalties in the amount of 12 percent of the loss if the insurer fails to timely pay claims arising under policies other than life or health and accident insurance policies.
LRS 22:6(2) defines “health and accident insurance” as
Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto.
Group hospitalization insurance policies have been held to be “health and accident” policies under § 657 in Rudloff v. Louisiana Health Services & Indem. Co., 385 So.2d 767 (La.1980); Boyle v. Fringe Facts, Inc., 414 So.2d 1333 (La.App. 2d Cir.1982); and Conner v. Business Insurance Life of America, 414 So.2d 1340 (La.App. 2d Cir. 1982). The insurer attempts to distinguish such policies from the ones at issue here because its policies provide a fixed cash payment for each day of hospitalization but benefits are not proportioned to the insured’s actual hospital and medical expenses. This distinction does not persuade us to agree with the insurer.
Each policy insures against “loss due to hospital or other specific expenses incurred by the Insured ...” Regardless of the method for calculating the amount of benefits, these insurance policies clearly provide benefits for days hospitalized, either or both for accidental bodily injury and sickness, within the meaning of § 6(2). These policies are not “other than health and accident” policies. We hold the assessment of penalties under these policies is governed by § 657(A).
The insurer admits it did not pay these claims within 30 days of receipt of written notice. Under such circumstances, the insurer must pay penalties unless it shows “just and reasonable grounds” for its failure. Having issued these policies without clearly asking the applicants to disclose or identify their other coverage, the insurer’s denial of these claims on the basis of “excessive insurance” was not “valid,” as it contends, or just and reasonable as the statute provides. Compare Ca-son, supra. When the insurer took the position that no benefits were owed because of the “misrepresentation” of the insured it risked the imposition of penalties and attorney fees in the event of a contrary judicial interpretation of the question and *1036 the insured’s answer in the application. Cason, supra; Jackson v. Security Industrial Ins. Co., 484 So.2d 966 (La.App. 3d Cir.1986).
The trial court correctly imposed penalties under § 657(A).
ATTORNEY PEES
Each plaintiff answered the appeal seeking additional attorney fees for services rendered on appeal.
This case was submitted without oral argument on briefs filed by plaintiffs-appel-lees and by the insurer in each case. The same attorney represented Johnny and Sarah Hassen at trial and on appeal. The trial court awarded each of the Hassens $1,000 as attorney fees. We shall allow Sarah Hassen an additional award. We do not make an additional award for Johnny Has-sen. The only issues raised on appeal pertaining to Johnny Hassen’s recovery were the alleged misrepresentations in the applications and the imposition of penalties. The attorney representing Johnny and Sarah Hassen briefed these issues for both clients. This attorney also briefed the issue concerning the calculation of Sarah Hassen’s benefits.
The attorney for Gregory Harris tracked the Hassens’ brief on the issues of misrepresentation and penalties, but briefed two additional issues pertaining to the calculation of Harris’s benefits.
An additional award of $350 in each case is appropriate on this record. The judgment will be amended to increase the awards of attorney fees to Sarah Hassen and Gregory Harris from $1,000 to $1,350 without increasing the award of attorney fees to Johnny Hassen.
DECREE
The judgment in favor of Johnny Hassen and Sarah Hassen is amended to award Sarah Hassen $1,800 plus an equal amount as the statutory penalty, or a total of $3,600, together with an attorney fee of $1,350. In all other respects in favor of Johnny Hassen and, as amended as to Sarah Hassen, and at the costs of the insurer, here and below, the judgment is AFFIRMED.
The judgment in favor of Gregory Harris is amended to award Gregory Harris $8,200, plus an equal amount as the statutory penalty, or a total of $16,400, together with an attorney fee of $1,350, and at the costs of the insurer, here and below, the judgment, as amended, is AFFIRMED.