484 So.2d 966 (1986)
Reverend Mack H. JACKSON, Plaintiff-Appellee,
v.
SECURITY INDUSTRIAL INSURANCE COMPANY, Defendant-Appellant.
No. 84-1086.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
Rehearing Denied April 4, 1986.
*967 Charles R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Talbot, Sotile, Carmouche, Marchand & Marcello, James E. Marchand, Donaldsonville, for defendant-appellant.
Before STOKER, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
This is a dispute over a fire insurance policy covering the contents of a dwelling. The Reverend Mack H. Jackson, the insured under a policy issued by Security Industrial Fire Insurance Company providing contents insurance of $10,000 and a living expense rider of $200, suffered the loss of all the movables inside his rented dwelling when it burned on February 4, 1983. Plaintiff made a claim, and the insurer on March 8, 1984, made a conditional tender of $2,069.75, which did not include the $200 living expense. Plaintiff rejected that offer and filed suit on May 2, 1984, alleging his loss was the full amount of the policy limits, $10,200. After trial, the trial court awarded $10,200, plus penalties and attorney's fees pursuant to LSA-R.S. 22:658. Attorney's fees were set at an amount equal to one-third of the award. The trial court used the contingency fee contract that the attorney had with his client as the measure of attorney's fees. The penalty awarded by the trial judge was 25% of the total amount of the loss. The 25% penalty assessment was error, 12% being the statutory amount, as counsel for plaintiff concedes in his brief.
Defendant appeals from this judgment. Except to amend the judgment to reduce the penalty assessment from 25% to 12%, we affirm.
FACTS
The policy was issued in August 1982. The loss occurred in February 1984. Lillie Bell was the insurer's agent. She sold this policy to plaintiff. She testified that the company offered two types of policies of contents insurance, one insuring for $5,000 and the other for $10,000. She stated that she put a value on all the property in the house, as she was instructed to do by her employer, Security Industrial, and that it was on the basis of her evaluation that Reverend Jackson decided to get the $10,000 limit coverage. She told him that if anything happened to his furniture "he would get the "$10,000." She filled out the application (attached to this opinion as Appendix A), noting thereon her evaluations of the property to be insured. She listed the property by room, evaluating separately the living room, the contents of which she put down at $2,000, the dining room and kitchen, which she evaluated at $3,000, two bedrooms, with contents totaling $3,000, and clothing and personal effects, which she valued at $3,500. These items totaled $11,500. She wrote these figures *968 down in their proper places, Reverend Jackson signed the application, and it thereafter became a part of the policy.
Five days after the fire occurred another of the insurer's agents, Audie Hunt, went to Reverend Jackson's house and prepared a proof of loss form (attached to this opinion as Appendix B). This proof of loss listed only 11 household items, giving their age and acquisition costs. Except for Reverend Jackson's signature, the proof of loss was filled out entirely by Mr. Hunt. Reverend Jackson testified that he signed several proofs of loss in blank, at Hunt's request. Hunt also testified that more than one proof of loss was signed. Hunt submitted a proof of loss to the company; it did not mention the $200 cost of living coverage. After Mr. Hunt brought in the proof of loss, listing the 11 specific items and their date and cost of acquisition, Dennis Caballero, Assistant Vice-President of the insurer, adjusted the loss and wrote a check to plaintiff for $2,069.75. According to Mr. Caballero, his company did not insure for replacement costs, but rather for the actual cash value of the items at the time they were lost, and the check for $2,069.75 represented what his company was willing to pay. The check contained a full release of the claim on the endorsement side.
There is no dispute that the fire destroyed the contents of the rented house, and that plaintiff is entitled to recover under the policy. What is disputed in the method of valuation of the loss. The plaintiff contends that the method of valuation of the loss was controlled by a statute, LSA-R.S. 22:667, while the insurer contends that the method of valuation of the loss was controlled by certain wording in the policy. This dispute is the principal issue in this case.
The statute is LSA-R.S. 22:667, which reads as follows:
"667. Personal property; specific coverage; valuation
"In any case in which a policy includes coverage for loss of or damage to personal property of the insured, from whatever cause, if the insurer places a valuation upon the specific items of covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, the insurer shall compute any covered loss of or damage to such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of prominent size, the actual method of such loss computation by the insurer."
"The provisions of this section shall not apply to insurance of the kind referred to in Paragraph (3) of R.S. 22:6 when the coverage pertains to land vehicles nor shall the provisions of this section apply to any property used primarily for business purposes."
The statute was enacted into our law in 1974. Its application to facts such as presented by the present case is res nova.
Applying the language of the above statute to the instant facts, we conclude that the insurer placed a valuation upon the specific items of covered property. We do not agree with the insurer's argument that this language necessarily means there must be a specific valuation on each specific item. The language can easily be read to mean that there need be only one valuation upon all the specific itemsa total, in other words. Moreover, we cannot say that the separation of the contents into four separate categories was not itself an itemization, designated by the insurer in the form of its application as its own choice of the means by which to value the property to be insured. The application contained a valuation placed by the insurer upon the specific items of covered property.
The valuation was used for purposes of determining the premium charge to be made under the policy. The company offered two coverages, $10,000 and $5,000. The premiums were different. The premium charged in the present case was based on a $10,000 coverage. While there was *969 not a clear explanation of the relationship at the trial, it is inconceivable that the valuation on the application would not be related to the coverage. We do not believe that the insurer would have issued a policy and charged a premium for $10,000 of coverage on contents worth only $2,000. Therefore, it is only reasonable to believe that the purpose of showing the value of the property on the application was to justify the coverage, and the premium. In the present case the valuation of the property, room by room, added up to $11,500, which was more than the limits of the policy, in this case $10,000.
When these two conditions, i.e. (1) valuation, for (2) premium charge, as explained in the foregoing two paragraphs, are met, then the statute goes on to require that the insurer shall compute the covered loss at such valuation, without deduction or offset. The insurer may use a different method to compute the loss only if the policy and any application therefor sets forth in type of prominent size the actual method of such (different) loss computation. The insurer in the present case argues that even if the conditions of R.S. 22:667 are found to exist, it has provided a different method of loss computation "in type of prominent size."
Prominent is a word everybody knows. It means "standing out." Our inquiry is whether the insurer in this case has provided both in the policy and in the application, a method of loss computation set forth in type of prominent size, or standing out. The insurer points to language on the first page of the policy which recites that it insures "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property...." On that first page where this language appears there are seven different prominencies of type size, and the least prominent of these is where the quoted language will be found. On the application (Appendix A) where "(Replacement value less depreciation)" is found, there are at least three type sizes, and the quoted expression is set forth in the type of the least size. The language relied on by the insurer does not stand out from anything. In fact, all else on the pages stand out from it. This language is not "set forth in type of prominent size" in either the policy or the application, and therefore the covered loss was to be computed at the valuation placed on the property by the insurer, without deduction or offset.
The award of the full amount of the policy limits, $10,200, was proper.
The insurer contends on appeal that its actions were not arbitrary and capricious, and that therefore no attorney's fees and penalties should have been awarded. It argues that the value of the property was $2,069, and that it tendered a check for that amount to the plaintiff soon after the fire.
We agree with the trial court that the defendant was arbitrary and capricious in refusing to pay this claim. As shown earlier in this opinion, the insurer's interpretation of its policy provisions was erroneous. An insurer must take the risk of misinterpreting its policy provisions. If it errs in interpreting its own insurance contract, such error will not be considered as a reasonable ground for delaying the payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney's fees. LeBlanc v. Underwriters at Lloyd's, London, 402 So.2d 292 (La.App. 3rd Cir.1981).
Nor can defendant derive any benefit in the form of a reduced liability for attorney's fees and penalties, from its so-called tender of $2,069. This tender was made in the form of a check, payable to plaintiff, but containing language on the endorsement side that would clearly have amounted to a release from and full settlement of his claim, had he accepted the check. The only way an insurer can avoid penalties under R.S. 22:658 up to the extent of a tender, is when there has been an unconditional tender. A tender conditioned upon a compromise and release is not an unconditional tender. O'Brian v. Allstate Ins. Co., 420 So.2d 1222 (La.App. 3rd Cir. *970 1982). Accordingly, the penalties and attorney's fees were properly assessed against the entire amount of the judgment.
Appellant complains that attorney's fees were too high. The trial court's determination of attorney's fees is in part a fact determination that is entitled to great weight on appeal. Cameron State Bank v. American Employers' Insurance Company, 401 So.2d 1090 (La.App. 3rd Cir. 1981), writ denied, 409 So.2d 674 (La.1981). The court heard an expert, experienced attorney from Natchitoches, where this loss occurred and where the case was tried, testify that a fee equaling one-third of the judgment of $10,200, was fair and reasonable, in light of the services performed, the results achieved, and the time required. The trial judge adopted that figure as attorney's fees. While we do not subscribe to a method of calculating penalty-attorney's fees based on a contingency fee contract which the attorney had with his own client, the amount awarded in this particular case and on these facts meets the standard test for reasonableness, and is affirmed.
For the foregoing reasons, the judgment appealed from is amended to read "a penalty of 12% on the sum of $10,200." In all other respects, the judgment is affirmed. Appellant is to pay all costs of this appeal.
AMENDED AND AFFIRMED.
*971 
*972