983 So.2d 66 (2008)
Mark LANDRY and Barbara Landry
v.
LOUISIANA CITIZENS PROPERTY INSURANCE COMPANY.
Nos. 2007-C-1907, 2007-C-1908.
Supreme Court of Louisiana.
May 21, 2008.
*68 Murray Law Firm, Stephen Barnett Murray, Arthur M. Murray, Nicole Ieyoub Murray, New Orleans; Cox, Cox, Filo, Camel & Wilson, Thomas Allen Filo, Paul Joel Cox, Richard Elliott Wilson, Lake Charles, for applicant in 2007-C-1907.
Haik, Minvielle & Grubbs, Theodore Michael Haik, III, New Iberia; Bienvenu, Foster, Ryan & O'Bannon, John W. Waters, Jr., New Orleans, for respondent in 2007-C-1907.
Andrew L. Plauch, Jr, Harry Alston Johnson, III, and James K. Ordeneaux, New Orleans, for amicus curiae, Louisiana Farm Bureau Mutual Insurance.
Daniel Michael Redmann, Metairie, for Fidelity & Deposit Co. of Maryland, Empire Fire & Marine Ins. Co., Empire Indemnity Ins. Co., and Centre Insurance Co.,
Bruce Campbell Dean, Metairie, Michael Ryan Casey, Cynthia Green St. Amant, Soren Erik Gisleson, Russ Michel Herman, Stephen Jay Herman, Allan Kanner, and Joseph Edward Cain, New Orleans, for amicus curiae Louisiana Association for Justice.
William Shelby McKenzie, Baton Rouge, for amicus curiae, American Insurance Association.
KIMBALL, J.
Following Hurricane Rita, plaintiffs suffered a total loss of their home from what is alleged to be a combination of wind and flood damage. Their homeowners' policy covered wind losses, but expressly excluded flood losses. Attempting to have Louisiana's Valued Policy Law, La. R.S. 22:695, applied to their case so that the issuer of their homeowners' insurance policy would be obligated to pay the face value of their policy, plaintiffs filed a motion for summary judgment in the trial court, which was granted. The court of appeal reversed the trial court's judgment on grounds that it had not determined whether wind was the "efficient or proximate cause" of plaintiffs' total loss. For the reasons that follow, we find the insurer validly set forth a different method of loss computation as allowed by La. R.S. 22:695. Consequently, the valuation provided by subsection (A) of the statute is inapplicable and defendant is not obligated to pay the face value of the policy as the different method of loss computation set forth in the policy does not require a payment of face value. For the reasons that follow, we find the lower courts erred in failing to recognize the actual method of loss computation agreed upon by the parties.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Mark and Barbara Landry, Louisiana citizens and homeowners, purchased a policy of insurance on their home, which is located at 19224 Highway 685, Erath, Vermilion Parish, Louisiana, from Defendant, Louisiana Citizens Property Insurance Corporation (Citizens). Plaintiffs' Petition for Property Damages alleges that defendant issued "a homeowners policy (fire, wind, and hail) bearing policy number FZH XXXXXXXXXX." The parties do not dispute that the policy covered any loss to the plaintiffs' home caused by wind and rain, but specifically excluded damage caused by flood waters. The "Homeowners Application" and a supplement *69 thereto (the "Supplement to Application for Insurance") was signed on February 4, 2005, by Barbara Landry. The supplemental application provided, directly beneath the applicant's personal information, a clause which read:
I acknowledge that in accordance with Act 850 of 1991 enacting R.S. 22:695 the insurance policy for which I have made application contains the following provisions and method of loss computation.
The supplemental application then set forth a method of loss computation different than that provided for in La. R.S. 22:695(A).
Similarly, the plaintiffs' homeowner's policy, issued in the name of Mark Landry on February 14, 2005, with a coverage period of February 5, 2005, through February 5, 2006, set forth Loss Settlement provisions similar to those provided in the supplemental application.
During the coverage period, on or about September 24, 2005, Hurricane Rita made landfall between Sabine Pass, Texas and Johnsons Bayou, Louisiana. Plaintiffs' home was in the path of Hurricane Rita and was rendered a total loss.[1]
Plaintiffs filed a Petition for Property Damages on August 22, 2006, claiming that defendant refused to tender the amount owed under the policy at issue and, therefore, violated the provisions of La. R.S. 22:695 and breached the insurance contracts at issue.[2] Plaintiffs specifically alleged that if "La. R.S. 22:695 obligates the defendant to pay the face value of the policy under the circumstances at issue in this case, then the defendant's breach of contract is conclusively established." In the alternative, plaintiffs claimed that if La. R.S. 22:695 does not require defendant to pay the face value of the policy in the event of a total loss, then defendant is liable to pay the portion of damage attributable to the covered peril of wind damage.
Defendant answered the Petition on September 28, 2006, asserting several liability *70 defenses.[3] Additionally, defendant affirmatively pled that "the damages of which Plaintiffs complain were caused by act(s) of God, including but not limited to flood waters, high tides and/or storm surge, for which defendant is not responsible under the terms, conditions, limits, and exclusions" contained in the policy which was in effect at all times relevant to the instant matter. Specifically, defendant relied on the flood exclusion provision in the homeowners' policy.[4]
Plaintiffs subsequently filed a Motion for Summary Judgment on November 13, 2006, seeking a determination as to whether defendant is liable for the full value of a structure if the entirety of the damage results in a total loss caused in part by wind, a covered peril, and in part by flood, a non-covered peril. The plaintiffs identified the "sole issue before the Court" on the Motion for Summary Judgment as "whether Louisiana's Valued Policy Law requires the fire and wind insurance carrier to pay the full value of the insurance policy in the event of a total loss of a structure if the total loss is only caused partially by wind and the remaining damage is caused by a non-covered peril (flood water)." Plaintiffs maintained that because they sought a ruling on a purely legal issue, specifically the interpretation of La. R.S. 22:695, there can be and are no issues of fact which could preclude summary judgment. One of the primary arguments set forth by plaintiffs was that the defendant's application for insurance did not include an alternative method of calculating the total loss when the loss is caused concurrently by covered and non-covered perils. Therefore, plaintiffs contended, the defendant failed to meet the statutory requirements for exemption from the Valued Policy Law.[5]
In response, on December 7, 2006, defendant filed a Memorandum in Opposition to Motion for Summary Judgment, arguing that its obligation extends no further than compensating plaintiffs for the value of wind damage only, an item specifically covered under the policy. Defendant opposed plaintiffs' Motion for Summary Judgment on various grounds, including that it is liable for damage caused by wind but not for water damage because of the water damage exclusion set forth in the insurance policy. Defendant claimed that La. R.S. 22:695 is inapplicable where a covered peril was not the cause of a structure becoming an actual or constructive total loss, and where the cause of the total loss was an excluded peril. Additionally, defendant argued that the parties validly opted out of the Valued Policy Law because of the use of the qualifying language required by La. R.S. 22:695(A). Defendant asserted that it specifically referenced La. R.S. 22:695 and clearly indicated its intention *71 to use an alternative method of loss computation in the supplemental application signed by plaintiff, Barbara Landry. Moreover, the alternative method of loss computation provided in the supplemental application was also included in the homeowners' policy under "Section I,Conditions." Finally, defendant maintained that the language clearly indicates only covered property losses are to be settled, "thus negating any notion that policy limits are to be paid in the event a combination of covered and non-covered losses equals to a total loss."
Plaintiffs filed a Supplemental Memorandum on December 13, 2006, to support their motion for summary judgment. The Supplemental Memorandum was primarily directed at defendant's assertion that it had provided an alternative method of loss computation in the insurance application and policy and, therefore the valuation provided in La. R.S. 22:695 did not apply. Plaintiffs recognized that La. R.S. 22:695 permits insurers to use a different method of loss computation (rather than paying the full face value), but argued that the statute requires the insurer to advise the insured of its method of loss computation in the event of a total loss should the insurer seek to pay anything less than the face value of the policy. Plaintiffs maintained that neither the application, nor the supplement thereto indicate that damage to a covered dwelling will be reduced because of water damage which is caused concurrently with other covered perils. Instead, plaintiffs argued that defendant was required to provide a different method of computing loss in the event of a loss caused concurrently by a covered and non-covered peril. Although defendant clearly had the opportunity to provide a different method of computing loss in the event of a loss caused concurrently by flood and wind, it did not do so. Thus, according to plaintiffs, denial of payment under the policy for damage caused in part by water has the effect of providing a different method of loss computation, a method other than payment of the face value of the policy, and must be contained in the insurance application and policy. Plaintiffs made several related concessions in the supplemental memorandum to their motion for summary judgment, including: (1) defendant must receive the benefit of its different method of calculation of loss as set out in the application amendment; (2) property losses are settled at the actual cash value at the time of loss, but not more than the amount required to repair or replace the damaged property; and (3) defendant must receive the benefit of the language contained in the application amendment with respect to covered property losses.
Finally, on December 14, 2006, defendant filed a Supplemental Memorandum in Opposition to Motion for Summary Judgment, asserting that the additional burdens proposed by plaintiffs in their supplemental memorandum in order for defendant to effectively opt out of the Valued Policy Law are not required by the statute as written. Defendant reiterated its position that the requirements of La. R.S. 22:695, were satisfied and the valuation set forth in that statute is inapplicable.
On December 18, 2006, the trial court conducted a hearing in this matter and, on January 4, 2007, granted the plaintiffs' Partial Motion for Summary Judgment, finding defendant liable for the full value of the policy. The Partial Motion for Summary Judgment was designated a final judgment in accordance with La. C.C.P. art. 1915(B).[6] The trial court found that *72 the Valued Policy Law applied and defendant had not set forth an alternative method of loss computation in the application.[7] The trial court reasoned that the statute is clear that in those cases where the insurer determines valuation for the property, bases the premium on that valuation, bears liability for any covered loss of a structure, and the property is deemed a total loss (although caused in part by wind, a covered peril, and in part by flood, a non-covered peril), the insurer must compensate any covered loss at valuation, thus the insurer is liable for the full amount of the policy.
Defendant filed a Petition for Appeal on January 18, 2007, which was granted by the trial court on March 12, 2007. Before the court of appeal, defendant raised two assignments of error. First, defendant asserted that the trial court erred in finding that in the event of a total loss caused in part by a covered peril and in part by a non-covered peril La. R.S. 22:695 requires that the entire policy limits be paid. Second, defendant argued that the trial court erred in finding La. R.S. 22:695 requires that the insurance application include a method of loss calculation allowing offsets and deductions for flood damage in the event of a total loss caused in part by a covered peril (e.g., wind) and in part by a non-covered peril (e.g., flood).
The court of appeal reversed the trial court's judgment granting summary judgment in favor of plaintiffs and amended, rendered, and remanded the case for a determination of whether the defendant could prove that flood water (the non-covered peril) was the "efficient or proximate cause" of the total loss of plaintiffs' home. Landry v. Louisiana Citizens Property Prop. Ins. Co., 07-247, p. 29 (La. App. 3 Cir. 8/28/07), 964 So.2d 463, 484. The court of appeal determined that the Louisiana Legislature, in enacting La. R.S. 22:695, never intended to expand coverage beyond that contemplated by the parties to an insurance contract, and held that the "V[alued] P[olicy] L[aw] simply fixes a value which an insurer must pay in the event a structure is deemed a total loss and a factual determination has been made that the total loss was `caused' by a specified peril defined in the insurance contract." Landry, 07-247 at p. 12, 964 So.2d 463 at 473-74.
The court of appeal did not directly address the issue of whether the parties agreed upon an alternative method of loss computation, however it did state that "[t]he `offset' or `opt out' clause . . . in the Valued Policy Law (when read conjunctively) again only speaks to the method for calculating the value of the property at the time the policy was issued; it does not *73 address coverage or causation. Resolution of these matters requires an interpretation of the policy coverage provisions and a causation determination by the fact-finder." (Emphasis in original; footnote omitted.)
In a footnote, the court of appeal addressed defendant's assertion that La. R.S. 22:695 does not apply to policies covering perils other than fire. Noting that the issue was not presented below[8] and that La. R.S. 22:695 is contained in the section of the Insurance Code which provides the form for a standard fire insurance policy, the court of appeal determined, without substantial analysis, that the term "fire policy" is broadly used in the insurance industry to refer to a homeowners' policy. Additionally, it cited state and federal courts that have applied La. R.S. 22:695 to claims for recovery under policies for damage other than fire.[9]
Both parties timely filed writ applications with this court, which were granted and consolidated on December 7, 2007. Landry v. Louisiana Citizens Prop. Ins. Co., 07-1907 (La.12/7/07), 969 So.2d 615 and Landry v. Louisiana Citizens Prop. Ins. Co., 07-1908 (La.12/7/07), 969 So.2d 615. Plaintiffs' writ application, filed on September 27, 2007, asserted a single assignment of error, specifically that the court of appeal erroneously failed to find that La. R.S. 22:695 obligates defendant to pay the full value on an insured's immovable property when a total loss of the property occurs through a combination of "any" covered peril (wind) and a non-covered peril (water), unless the insurer sets forth, in both the policy and application, a different method of loss computation.
The defendant filed a writ application on September 27, 2007, asserting four assignments of error. First, defendant argued that the court of appeal erred by converting plaintiffs' Motion for Summary Judgment into a Petition for Declaratory Judgment. Second, although the court of appeal properly reversed the trial court's grant of summary judgment, the defendant asserted that it erroneously amended the judgment and remanded the matter with instructions directing the trial court to apply an incorrect burden of proof. Third, the court of appeal erroneously interpreted the opt-out provision in La. R.S. 22:695 when it concluded that the opt-out was incorrectly applied in this matter. Finally, the court of appeal erred by considering photographs proffered in the trial court without addressing whether or not or on what basis they should have been admitted into evidence by the trial court.
We granted certiorari to review the decision of the court of appeal in this matter and, more specifically, to determine whether the court of appeal was correct in reversing the trial court's grant of summary judgment in favor of plaintiffs.

DISCUSSION
Generally, before this court applies and interprets a statute, we must first determine as a legal matter whether that statute applies in the case at bar. The parties did not ask this court to resolve the issue of the applicability of La. R.S. 22:695 *74 to the insurance policy at issue in this matter. Indeed, defendant conceded at oral argument before this court that it was not challenging the applicability of the statute in this case. Because of the unique issues presented with respect to the applicability of La. R.S. 22:695 to this homeowners' policy[10] and because we reach the
*75 This Page Contains Footnotes. *76 same result whether the statute applies or does not apply to the instant case,[11] we need not resolve the question of the applicability of the statute in this particular case. Consequently, we will assume arguendo that La. R.S. 22:695 applies to this case for the remainder of this opinion.
Valued Policy Laws were enacted in many states in the late 1800's and early 1900's "in response to the perception that insurers were profiting by selling insurance policies with inflated face values, and then, after the building suffered a total loss, litigating the actual value of the insured structure, even though the insured had been charged premiums for the policy limits. . . ." John V. Garaffa, The Uncertain Scope of "Hurricane Damage" Under State Valued Policy Laws, 41 Tort Trial & Ins. Prac. L.J. 943, 946 (2005-2006), citing Tom Baker, The Geneology of Moral Hazard, 75 Tex. L.Rev. 237 (1996-1997). See also Atlas Lubricant Corp. v. Federal Ins. Co. of New Jersey, 293 So.2d 550, 556 (La.App. 4 Cir.1974) ("Valued policy laws . . . dealing with [f]ire ins[urance] policies were enacted in the late 1800's and early 1900's principally as a protective measure for insureds."). A secondary objective of Valued Policy Laws was to simplify the adjustment process following a total loss *77 and to facilitate prompt settlement of insurance claims. Garaffa at 946-47.
Louisiana's Valued Policy Law was first enacted in 1900. From the time it was enacted until the time of its repeal in 1988, the provisions of the Valued Policy Law were mandatory for all policies to which it applied. When the statute was reenacted in 1991, however, the legislature added provisions which allow an insurer to dispense with the requirement that it compute and indemnify or compensate any covered loss of or damage to a covered immovable property at the valuation used for purposes of determining the premium charged without deduction or offset by setting forth in the policy and any application therefor a different method of loss computation.
Specifically, subsection (A) of La. R.S. 22:695 provides:
A. Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer. . . .
(Emphasis added.) Thus, La. R.S. 22:695(A) provides in pertinent part that if an insurer places a value on covered property and uses that valuation to determine the premium charged the insured, in the case of total loss the insurer shall compute and compensate any covered loss of the property at that valuation unless a different method of loss computation is set forth in the policy and policy application in type of equal size.
Plaintiffs' Homeowners Application contained a separate document entitled "Supplement to Application for Insurance." Under the boxes that were filled in with plaintiff Mark Landry's name, address and social security number is the following statement:
I acknowledge that in accordance with Act 850 of 1991 enacting R.S. 22:695 the insurance policy for which I have made application contains the following provisions and method of loss computation:
The application supplement then states:
SECTION I CONDITIONS
3. Loss Settlement. Covered property losses are settled as follows:
a. Property of the following type:
(1) Personal Property;
(2) Awning, carpeting, household appliances, outdoor antennas and outdoor equipment whether or not attached to building; and
(3) Structures that are not buildings;
at actual cash value at the time of loss but not more than the amount required to repair or replace.
b. Buildings under Coverage A and B at replacement cost without deduction for depreciation, subject to the following:
(1) If, at the time of loss, the amount of the insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after the application of deductible and without deduction for depreciation, but not more than least of the following amounts:

*78 (a) The limit of liability under this policy that applies to the building;
(b) The replacement cost of the part of the building damaged for like construction and use on the same premises; or
(c) The necessary amount actually spent to repair or replace the damaged building.
(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:
(a) The actual cash value of that part of the building damaged; or
(b) That proportion of the cost to repair or replace, after application deductible [sic] and without deduction of depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.
* * *
(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.
However, if the cost of repair or replace [sic] the damage is both:
(a) Less than 5% of the amount of insurance in this policy on the building, and
(b) Less than $2500;
we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.
(5) You may disregard the replacement cost of loss settlement provisions and make claim under this policy for loss or damage to the building on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this condition 3. Loss Settlement.
Following these provisions, the application supplement is signed and dated by plaintiff, Barbara Landry, and the producer. Plaintiffs' insurance policy contains similar loss settlement provisions.[12]
Based on this language contained in the application and policy, defendant contends the parties to the insurance contract provided for a different method of loss computation as allowed by La. R.S. 22:695(A) and there can be no valid assertion that they are obligated to pay plaintiffs the face value of their policy under that statute. Defendant points out the application clearly references La. R.S. 22:695 and shows an intent to use a different method of loss computation. Defendant asserts the method of loss computation set out in the application and policy "makes it clear that only covered property losses are to be settled, thus negating any notion that policy limits *79 are to be paid in the event a combination of covered and non-covered losses equate to a total loss." R. p. 76. (Emphasis in original.)
In response to defendant's claim, plaintiffs argue that defendant did not opt out of the provisions of La. R.S. 22:695 because it cannot expand its measure of loss computation to deny benefits due to water damage. Plaintiffs state the documents do not suggest that damage to a covered dwelling will be reduced due to water damage which is caused concurrently with other covered perils. Further, plaintiffs contend defendant clearly had the opportunity to provide a different method of computing loss in the event of loss caused concurrently by flood and wind but did not do so. Plaintiffs add that if defendant wanted to use a different method of loss computation limiting coverage due to flood or water damage it could have, but did not.
"Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature's intent." La. C.C. art. 2; Detillier v. Kenner Regional Med. Ctr., 03-3259, p. 3 (La.7/6/04), 877 So.2d 100, 103. We have consistently held that the starting point in interpreting any statute is the language of the statute itself. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation will be made in search of the legislature's intent. La. C.C. art. 9; La. R.S. 1:4; Detillier, 03-3259 at p. 4, 877 So.2d at 103.
As mentioned above, prior to the 1991 reenactment of La. R.S. 22:695 by Act No. 850 of 1991, the statute did not contain a provision allowing the parties to agree upon a different method of loss computation. With the 1991 reenactment, however, the legislature changed the provisions of the law and allowed, for the first time, a different method of loss computation to be set forth in the application and policy. As originally proposed, House Bill No. 776, which eventually became Act No. 850 of 1991, did not contain the provision at issue which allows the insurer to set forth a different method to be used in the computation of loss. The bill was referred to the House Committee on Commerce where an amendment was proposed by Mr. E.L. Henry, a representative of State Farm Insurance, that "would provide that when policy includes coverage for loss to a dwelling of the insured and if the company places a valuation on the property and use[s] the valuation for purposes of determining what to charge for the premium, the company would compute a loss on the same basis unless a different method of computating [sic] loss was utilized. In that case, the method would be set forth in prominent type on the policy or application." Minutes of the House Commerce Committee, June 6, 1991, p. 7. The Senate Commerce Committee proposed an amendment that changed the "prominent type" requirement to an "equal type" requirement.[13] These amendments were *80 eventually adopted and form part of Act No. 850 of 1991.
This court has never before had occasion to interpret the provision at issue in this case.[14] The language of the statute clearly provides that if an insurer places a value on covered property and uses that valuation to determine the premium charged the insured, in the case of total loss the insurer shall compute and compensate any covered loss of the property at that valuation without deduction or offset unless a different method of loss computation is set forth in the policy and policy application in type of equal size. The legislative history shows an attempt by the insurance industry to lessen the impact of the statute by providing a means for the insurer to set forth a different method of loss computation, an attempt which was ultimately successful as the legislature included the provision in the statute. This compromise allows insurers to set forth an alternative method of loss computation, but protects insureds by requiring the insurers to provide notice in the application that an alternative method of loss computation has been stated in the policy. For the reasons that follow, the insurance contract at issue validy set forth a different method of loss computation than that provided for in La. R.S. 22:695.
A plain reading of La. R.S. 22:695 reveals that few conditions are placed upon parties wishing to set forth a different method of loss computation. While the statute requires that the chosen method be specified in both the policy and the application in "type of equal size," it does not place any limitation upon the actual method of loss computation set forth by the insurer.[15] The language of the statute simply allows the parties to set forth something different than the face value without deduction or offset as the method for computing and compensating any covered loss.
Here, the application for insurance contains a supplement that sets forth in a *81 separate document a different method of loss computation. It states, "I acknowledge that in accordance with Act 850 of 1991 enacting R.S. 22:695 the insurance policy for which I have made application contains the following provisions and method of loss computation," and then sets forth that method which is to be used to value and settle covered property losses. This supplement is signed and dated by one of the plaintiffs and the producer. The policy also sets forth this method of settling covered losses. This supplement to the application clearly evidences an intent to provide another method of loss computation as allowed by La. R.S. 22:695. Indeed, the supplement to the application, which sets forth a different method of loss computation, specifically references the statute. The introductory language of the supplement to the application, along with the requirement of a signature, clearly calls the applicant's attention to the alternative method of loss computation set forth. The parties' intent to provide a different method of loss computation is evident. The questions thus become whether this alternative method of loss computation was validly set forth in this case and, if so, how that different method of loss computation applies in this case.
Presumably, the "type of equal size" requirement refers to the size of type used in those provisions surrounding the actual method of loss computation provided in the document (as opposed to requiring the same size type to be used in both the policy and the application). This requirement protects the insured and is intended to prevent the insurer from "hiding" the alternative method of loss computation in fine print. In the instant case, the size of type specifying the method of loss computation in the policy is equal to the size of type in surrounding provisions. The application supplement is a separate document that contains only the chosen method of loss computation. The type size used in the supplement to the application appears to be slightly smaller than the type size used in the original application and the policy. However, the insured's attention is specifically called to the alternative loss computations method because it is contained in a separate document and requires a separate signature. It cannot be said the smaller type is an attempt to "hide" the  alternative method of loss computation. Additionally, the introductory language placed before the alternative method of loss computation is set forth in the application supplement in a smaller type than the rest of the document. This does not make the alternative method of loss computation invalid, however, because the selected method, which is what the requirements in the statute regulate, is in a larger type size and plaintiffs' attention was clearly drawn to this separate document. In any case, plaintiffs conceded that defendant must receive the benefit of the different method of calculation of loss as set out in the application amendment.
Thus the insurer validly set forth a different method of loss computation as allowed by La. R.S. 22:695. Because the statute sets no limits on the different method that may be set forth by the insurer, we find the different method of loss computation set forth in the policy and application therefor complies with the requirements of the statute. The question then becomes what is the effect of the insurer's act of setting forth this alternative method of loss computation.
The Valued Policy Law has been part of Louisiana law since 1900 and requires insurers to set the value at which total losses of covered property, under certain circumstances, are to be settled. Because the valuation of the property deemed a total loss was set in advance by statute, the *82 public interest was protected as greater certainty in the contract of insurance was obtained. See New Orleans Real Estate Mortgage & Securities Co. v. Teutonia Ins. Co. of New Orleans, 128 La. 45, 67, 54 So. 466, 473 (1910) (on reh'g). The Act originally creating the Valued Policy Law stated that it was an Act "[t]o fix the value of immovables by nature insured against loss or damage by fire, in case of loss or damage by fire." Act No. 135 of 1900. (Emphasis added.) This court recognized that stated purpose in Garnier v. Aetna Ins. Co. of Hartford, Conn., 181 La. 426, 159 So. 705, 708,(La.1935) when it noted that the policy issued was "written under the so-called `Valued Policy Law' (Act No. 135 of 1900). . . . The insurance company itself assessed, `or permitted to be assessed at the time of the issuance of the policy,' the value of the house at $3,000; that being the amount of insurance carried." (Emphasis added).
Louisiana's Valued Policy Law has been described by this court as "merely prescrib[ing] a rule of public policy for establishing the pecuniary loss suffered by its partial or total destruction by fire." Lighting Fixture Supply Co., Inc. v. Pacific Fire Ins. Co. of New York, 176 La. 499, 510-11, 146 So. 35 (1932). See also, Jordan v. Commercial Union Fire Ins. Co. of New York, 167 So. 227, 233 (La.App.Orleans 1936) ("The Valued Policy Law provides that the insurer shall not be permitted to question the value of the property destroyed. . . ."). Finally, this court explained the Valued Policy Law, prior to its reenactment in 1991, as follows:
The valued policy statute must be regarded as part of the policy of insurance, and the amount written in the policy as liquidated damages agreed upon by the parties, and this is so, notwithstanding the policy is inconsistent therewith. . . . Any attempt to limit the insurer's liability in conflict with the valued policy statute cannot be of any avail.
Hart v. North British & Mercantile Ins. Co., 182 La. 551, 565, 162 So. 177 (1935) (citations omitted).
These statements make it clear that La. R.S. 22:695(A) is a valuation provision. Although originally intended as a mandatory rule of public policy, the legislature has determined that the valuation provided by the statute can be changed by the insurer. When the insurer sets forth an alternative method of loss computation in the policy, and includes it in the application as required by the statute, the insured is placed on notice of the method of loss computation to be used in the event of a loss. Once the valuation provided by La. R.S. 22:695(A) is validly changed in accordance with the provisions of the statute itself and, consequently, a different method of loss computation is established, then the provisions of the statute at issue are inapplicable. Accordingly, the effect of complying with the requirements set forth in La. R.S. 22:695(A) and choosing an alternative method of loss computation is that the provisions of loss computation provided by the policy, rather than those provided by the statute, control the settlement of losses. In the instant case, the policy provides that covered losses are settled at replacement cost without deduction for depreciation subject to various provisions in some cases and at actual cash value subject to various provisions in other cases. Subsection (A) of La. R.S. 22:695 does not apply to plaintiffs' claim, and defendant is therefore not obligated to pay the face value of the policy to plaintiffs since the alternative method of loss computation set forth in the policy does not require payment of the face value of the policy in this case.
Plaintiffs argue that the requirements of the statute are not negated because *83 defendant did not provide a different method of computing a total loss in the event the total loss was caused concurrently by wind damage and water damage. This argument, however, is without merit. Although the statute provides a valuation for the settlement of a claim in the case of total loss, it also allows the insurer to set forth a different method to be used in that computation of loss. Defendant has set forth a different method for settling covered property losses, which clearly indicates that only covered losses are to be settled. This method of loss computation applies to covered losses that are both total and partial. It would be absurd to require the policy to set forth a method for settling a non-covered loss, even if that non-covered loss was caused concurrently with a covered loss. As explained above, once an insurer validly provides a different method of loss computation under the statute, its substantive valuation provisions become inapplicable. The purpose of La. R.S. 22:695 is to determine valuation, accordingly it is a valuation statute and does not address causation as plaintiffs' argument presupposes. There is, therefore, no reason to require defendant to set forth a different method of loss computation for losses caused concurrently by covered and non-covered perils. Thus, losses, including total losses, are computed and compensated according to the policy provisions, not the statutory provisions. Whether the statutory valuation provisions would require an insurer to pay the face value of the policy when a total loss is caused concurrently with a covered and a non-covered losses is irrelevant because those provisions no longer apply once a different method of loss computation is validly set forth.
Moreover, La. R.S. 22:695 does not condition the alternative method of loss computation set forth by the insurer upon its application solely to total losses. The statute only requires that a different method for the computation of loss be set forth. We see no reason why the different method of loss computation cannot apply to both total and partial losses. Plaintiffs would have this court read the word "total" into the provisions allowing the insurer to set forth an alternative method of loss computation.
For the reasons explained above, we find defendant validly provided a different method of loss computation as permitted by La. R.S. 22:695. Consequently, the valuation provisions of the statute are not applicable to plaintiffs' claim. The defendant is entitled to settle plaintiffs' covered property losses as set forth in the policy. The trial court therefore erred in granting summary judgment in favor of plaintiffs based on a substantive application of the valuation provisions of La. R.S. 22:695. The court of appeal was correct in its reversal of the trial court's grant of summary judgment in favor of plaintiffs. It was incorrect, however, to interpret and apply the valuation provisions of La. R.S. 22:695 to the facts of this case, and to the extent it interpreted and applied those provisions, its judgment is vacated.[16]

DECREE
The court of appeal's judgment reversing the judgment of the trial court is affirmed. That portion of the court of appeal's *84 judgment purporting to interpret and apply the valuation provisions of La. R.S. 22:695 in this case is vacated. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
NOTES
[1] The parties do not dispute that the damage to the home exceeded its value and it was rendered a total loss.
[2] La. R.S. 22:695 provides:

A. Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer. Coverage may be voided under said contract in the event of criminal fault on the part of the insured or the assigns of the insured.
B. Any clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void, and have no legal effect. Nothing contained herein shall be construed to prevent any insurer from cancelling or reducing, as provided by law, the insurance on any property prior to damage or destruction.
C. The liability of the insurer of a policy of fire insurance, in the event of total or partial loss, shall not exceed the insurable interest of the insured in the property unless otherwise provided for by law. Nothing in this Section shall be construed as to preclude the insurer from questioning or contesting the insurable interest of the insured.
D. This Section shall only apply to policies issued or renewed after January 1, 1992, and shall not apply to a loss covered by a blanket-form policy of insurance nor to a loss covered by a builders risk policy of insurance.
[3] Defendant also filed a Dilatory Exception of Vagueness and Ambiguity prior to filing its Answer as required by La. C.C.P. art. 928. Prior to the scheduled October 5, 2006, hearing to show cause, plaintiffs were granted leave to file and filed an Amended Petition on October 26, 2006. Defendant later filed an Answer to First Amending Petition for Damages on November 20, 2006.
[4] The flood exclusion, set forth in "Section I  Exclusions" of plaintiffs' policy, provides:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
. . .
3. Water Damage, meaning:
a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind . . .
[5] The parties sometimes refer to the provision permitting an insurer to set forth an alternative method of loss computation in La. R.S. 22:695 as the "opt out" clause or provision.
[6] La. C.C.P. art. 1915(B) provides:

(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
[7] In its written reasons for judgment, the trial court stated, "[t]he evidence reveals that the application did not set forth any method of loss computation allowing offsets and deductions for flood damage in the event of a total loss."
[8] The issue was mentioned in defendant's Opposition to plaintiffs' Motion for Summary Judgment. Defendant claimed "one could argue" application of La. R.S. 22:695 is restricted to losses caused by fire because that is what the language of the statute provides, but did not "wish to burden the Court with resolving that issue."
[9] Holloway v. Liberty Mut. Fire Ins. Co., 290 So.2d 791 (La.App. 1 Cir.), writ denied, 293 So.2d 191 (La. 1974) and Real Asset Management, Inc. v. Lloyd's of London, 61 F.3d 1223 (5th Cir.1995).
[10] La. R.S. 22:695, which is in that part of the Insurance Code entitled "Standard Fire Policy," begins with the words, "Under any fire insurance policy insuring inanimate, immovable property in this state. . . ." Thus, by its own terms, it applies to any "fire insurance policy." In our view, this language is ambiguous because it could be construed to mean that La. R.S. 22:695 applies to standard fire policies written to conform to the provisions of La. R.S. 22:691, to any insurance policy covering the peril of fire, or to any policy under which fire caused a covered loss.

Recognizing this ambiguity, and in spite of the fact that defendant did not challenge the applicability of the statute to the facts of this case, this court requested additional simultaneous briefing by the parties on the issue of whether La. R.S. 22:695 applies to the homeowners' policy at issue in this case. Plaintiffs asserted that the statute is applicable to their homeowners' policy because a homeowners' policy is a "fire insurance policy" as that term is used in the statute. Defendant, on the other hand, contended that the statute applies only to losses caused by the peril of fire.
The Valued Policy Law was first enacted in Louisiana in 1900, by Act 135, which provided in part:
To fix the value of immovables by nature insured against loss or damage by fire, in case of loss or damage by fire.
Section 1. Be it enacted by the General Assembly of the State of Louisiana in General Assembly convened That whenever any policy of insurance against loss by fire is hereafter written or renewed. . . .
The language, "policy of insurance against loss by fire," remained the same until 1952. The plain meaning of this phrase indicates that as originally enacted the Valued Policy Law was intended to apply to any insurance policy that covered the peril of fire.
In Section 1 of Act 295 of 1952, the legislature changed the statute so that the law applied to "any fire insurance policy." This language remains in the statute today. In changing the wording of the statute, the legislature indicated its intent to change the law. See La. R.S. 24:177(C) ("The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter and court decisions construing those articles or statutes, and where the new article or statute is worded differently from the preceding law, the legislature is presumed to have intended to change the law."). See also Brown v. Texas-La Cartage, Inc., 98-1063, p. 7 (La.12/1/98), 721 So.2d 885, 889 ("Where a new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law."); Louisiana Civil Service League v. Forbes, 246 So.2d 800, 258 La. 390 (La.1971) ("It is a well established rule of statutory construction that the legislature is presumed to have enacted a statute in the light of preceding statutes involving the same subject matter and decisions construing such statutes, and, where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law."). Thus, "any fire insurance policy" must mean something other than "any policy of insurance against loss by fire."
In 1988, La. R.S. 22:695 was repealed in its entirety by Act Number 951, Section 1. In 1991, the statute was reenacted by Act No. 850 with several changes. The reenactment, however, retained the beginning language, "[u]nder any fire insurance policy," and is the version of the statute in effect today. While the former language was ultimately retained, the legislature rejected various proposals to change this language in 1991. The legislative history of the 1991 reenactment of the statute thus sheds some light on the proper interpretation of the term "any fire insurance policy."
The original version of the bill that became Act No. 850 of 1991 purported to apply to "[a]ny insurer of a policy of fire insurance issued by an insurer on property in this state." This language was amended in the House Commerce Committee as a result of a compromise with insurance industry representatives and later amended non-substantively on the House floor. These amendments changed the language at issue to the following: "In any case in which a policy includes coverage for loss of, or damage to, property of the insured from the peril of fire. . . ." This proposed language was comparable to the language used in La. R.S. 22:667, a statute that relates to valued policies for personal property and was enacted in 1974. Because both La. R.S. 22:695 and La. R.S. 22:667 relate to valued policies, they can be considered laws on the same subject matter. This version of the bill, however, was amended by the Senate Committee on Commerce to reflect what is now the text of La. R.S. 22:695: "Under any fire insurance policy insuring inanimate, immovable property in this state. . . ." This history suggests an intentional legislative attempt to narrow the scope of the application of the statute. Additionally, La. R.S. 22:694, which was enacted in 1958 and is the statute immediately preceding the valued policy statute at issue, begins, "No policy of fire, lightning or windstorm insurance. . . ." The legislature's failure to adopt similar language in La. R.S. 22:695 suggests its use of "fire insurance policy" was deliberate and limiting.
It can be seen that in the process of reenacting La. R.S. 22:695 in 1991, the legislature changed the applicability of the statute from "a policy of fire insurance" to "a policy includ[ing] coverage for . . . the peril of fire" to "any fire insurance policy." These changes indicate a legislative decision to apply the obligations of La. R.S. 22:695 to a fire insurance policy rather than any policy that provides fire coverage. It follows that the fire insurance policy referred to in La. R.S. 22:695 is the Standard Fire Policy established in La. R.S. 22:691. Had the legislature intended the statute to apply to policies other than those fire policies providing coverage for fire losses, it could have easily used different language, as it did in La. R.S. 22:667(A) ("In any case in which a policy includes coverage for loss of or damage to personal property of the insured, from whatever cause. . . .") and La. R.S. 22:694 ("No policy of fire, lightning or windstorm insurance. . . ."). Instead, as explained above, it expressly rejected language similar to that used in La. R.S. 22:667(A).
The "fire insurance policy" to which La. R.S. 22:695 applies appears to be a specific policy separate and distinct from a typical homeowners' policy, although both policies insure against the peril of fire. This distinction is generally recognized in insurance law:
Dwelling versus homeowners' policies both of these are personal policies, but dwelling coverage tends to protect against a narrower class of perils, usually limited to physical damage, while homeowners' policies are `multi peril' policies which ordinarily protect against all the perils covered by a dwelling policy, as well as loss by crime and liability to third parties; homeowners' policies clearly reflect the insured's desire for broader coverage, which may be taken into account in subtle ways in a judicial coverage analysis.
10A Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 148.4 (3d ed.2005). Thus, these different types of policies serve different purposes.
The Louisiana legislature has specifically recognized a difference between a fire insurance policy and a homeowners' policy by defining them separately in La. R.S. 22:6, which defines "[k]inds of insurance." This statute provides in pertinent part:
Insurance shall be classified as follows:
* * *
(10) Fire and extended coverage.
(a) Insurance against loss or damage by fire, smoke and smudge, lightning or other electrical disturbances;
(b) Insurance against loss or damage by earthquake, windstorms, cyclone, tornado, tempests, hail, frost, snow, ice, sleet, flood, rain, drought or other weather or climatic conditions including excess or deficiency of moisture, rising of the waters of the ocean or its tributaries;
(c) Insurance against loss or damage by bombardment, invasion, insurrection, riot, strikes, civil war or commotion, military or usurped power, or explosion (other than explosion of steam boilers and the breaking of fly wheels);
(d) Insurance authorizing the insurer to repair, rebuild or replace with new materials of like size, kind and quality, property damaged or destroyed by fire or other perils insured against.
(e) Insurance against loss or damage to property from any other hazard or cause and against loss consequential upon such loss or damage.
* * *
(15) Homeowners' insurance. A policy of insurance on a one- or two-family owner-occupied premises, which combines fire and allied lines with any one or more perils of casualty, liability, or other types of insurance within one policy form at a single premium, where the insurer's liability for damage to the premises under said policy is determined with reference to the replacement value of the premises.
These provisions suggest that a fire policy, even if it includes coverage for perils other than fire as allowed by La. R.S. 22:691(E), is entirely distinct from a homeowners' policy.
Plaintiffs argue, however, that every policy that insures immovable property against the peril of fire is understood to be a "fire insurance policy." Plaintiffs point out that subsection (D) of the statute explicitly excludes losses covered by a blanket-form or a builders risk policy of insurance. They contend that each of these policies must be a "fire insurance policy" as that term is used in La. R.S. 22:695 or there would be no need to exclude them. Plaintiffs note that the Insurance Code does not provide separate chapters governing homeowners' policies, commercial property and casualty polices, blanket-form policies, or builders risk policies, and contend that if homeowners' policies are not considered a subset of fire policies subject to the provisions of Title 22, Chapter 1, Part XV, then these policies would be largely ungoverned by Louisiana Law. In response to this particular argument, we note our discussion is limited to the meaning of the term "any fire insurance policy" as that term is used in La. R.S. 22:695. Additionally, plaintiffs argue that this court has held that a homeowners' policy is inseparable from the Standard Fire Policy. See e.g. Grice v. Aetna Cas. & Sur. Co., 359 So.2d 1288 (La.1978); Rodriguez v. Northwestern Nat. Ins. Co., 358 So.2d 1237 (La. 1978); Lee v. Travelers Fire Ins. Co., 219 La. 587, 53 So.2d 692 (1951). These cases, however, did not specifically analyze La. R.S. 22:695 or its legislative history; therefore, their analytical value is questionable in this particular case.
It appears to us that the legislative history of La. R.S. 22:695, combined with the definitions provided in La. R.S. 22:6(10) and (15), and the contrast of the language used in related statutes, reveals that the statute is intended to apply only to fire insurance policies, which may include coverage against other perils as allowed by La. R.S. 22:691 and is distinct from homeowners' policies. However, it seems the insurance industry has always assumed that the use of the term "fire insurance policy" includes homeowners' policies. We need not resolve this issue in the instant matter because the result is the same whether the statute applies or not. We urge the legislature to consider this issue and to make changes to the language of La. R.S. 22:695 if needed.
[11] That is, if La. R.S. 22:695 does not apply to the homeowners' policy at issue in this case, then plaintiffs are not entitled to summary judgment on the basis that defendant is obligated to pay them the face value of their policy under the terms of that statute. Similarly, as explained in the remainder of this opinion, if La. R.S. 22:695 does apply to the homeowners' policy at issue, plaintiffs are not entitled to summary judgment on the basis that defendant is obligated to pay them the face value of their policy pursuant to the statute because a different method of loss computation was set forth in the policy and application therefor. Hence, under either scenario plaintiffs' Motion for Summary Judgment should be denied.
[12] The "Broad Form" policy language of Section I-Conditions, 3. Loss Settlement is identical to the language provided in the application supplement. However, the policy contains an endorsement for Louisiana that slightly changes b.(1)(b) to provide, "The replacement cost of that part of the building damaged with material of like kind and quality; or." Thus, "with material of like kind and quality" replaces "for like construction and use on the same premises." This change is not material. In any case, plaintiffs conceded that defendant must receive the benefit of its different method of calculation of loss as set out in the application amendment.
[13] This change may have been in response to courts' difficulties in defining "prominent," as used in La. R.S. 22:667, relating to movables. By requiring type of equal size, the legislature avoided the difficulties that had arisen in defining "prominent" type, but continued to protect insureds from an insurer's attempt to "hide" the alternative method of loss computation in small print. See, Jackson v. Security Industrial Insurance Co. 484 So.2d 966 (La. App. 3 Cir.1986) (the language in the policy relied on by the insurer was not "prominent," as it did not stand out from the rest of the policy language) and Bonnette v. Foremost Ins. Co., 493 So.2d 874 (La.App. 3 Cir.1986) (although defendant did not satisfy the exception to La. R.S. 22:667 because the insurance application was not introduced into evidence, the Third Circuit noted that in order to fall under the exception of the valued policy law defendant had to set out in prominent size of type in its policy and the insurance application that in case of loss, it would value the insured item according to a different standard than the value assigned in the policy).

Cf. La. R.S. 22:667, relating to valued policies on movables, which provides in pertinent part:
(A) In any case in which a policy includes coverage for loss of or damage to personal property of the insured, from whatever cause, if the insurer places a valuation upon the specific item of covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, the insurer shall compute any covered loss of or damage to such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of prominent size, the actual method of such loss computation by the insurer.
(Emphasis added.)
[14] At the hearing on plaintiffs' motion for summary judgment in the trial court, defendant's attorney stated, "I can represent to the Court that Louisiana Citizens is the only company that I know of that has this kind of language in their application. Louisiana Citizens specifically put this in there, had the plaintiffs or the insureds sign the application indicating here's how we're going to calculate the loss." R. pp. 184-85.
[15] Subsection (B) of the VPL states in part, "Any clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void, and have no legal effect." This subsection does not void a different method of loss computation that is set forth in accordance with subsection (A) as the statute itself allows a different method of loss computation to be agreed upon by the parties.
[16] As explained in this opinion, the valuation provisions of La. R.S. 22:695 do not apply in this case. The court of appeal discussed the "efficient or proximate cause" [sic] doctrine, as well as burden of proof and causation issues. Because discussion of those issues was unnecessary, we have vacated that portion of the court of appeal judgment and the trial court should make an independent assessment of those issues should they arise on remand.